## A. RHINE V. THE CITY OF MCKINNEY.

### (Case No. 3690.)

1. CONSTITUTIONAL LAW — EMINENT DOMAIN — PRIVATE PROPERTY TAKEN FOR PUBLIC USE.— Section 130 of the act of March 15, 1875, provides in effect that any city that may adopt that act as its charter, desiring to appropriate the land of an individual within its corporate limits for the purpose of a street, in case it cannot agree with the owner upon the price of the land to be taken, may appoint three disinterested freeholders of said city to assess the damages which the land owner may sustain on account of such appropriation, who shall meet, and, after being duly sworn to make a just and true appraisement, and after hearing the parties, shall estimate the damages which the land owner will sustain by reason of such appropriation, and report to the mayor and aldermen of the city, who may adopt or reject the same. No appeal was given from their decision. *Held* —

   1. Though the interests of individual members of the corporation selected to estimate the damages might be so remote as not to disqualify them to act when properly appointed, yet they should be selected under a rule which would be fair and impartial alike to both parties. Neither party should have the exclusive right to select the appraisers.

   2. Though in taking private property for public use, the party whose property is taken is not entitled, as a matter of right, to a trial by jury, unless the right be given in express terms by law; yet the proceeding is judicial in its character, and should be before an impartial tribunal, under the rights and privileges which attend judicial investigations.

   3. The section is unconstitutional.

APPEAL from Collin. Tried below before the Hon. R. R. Gaines.

The opinion states the case.

*Richard Maltbie* and *J. H. Jenkins* for appellant. — That sec. 130, p. 150 of the acts of the legislature of A. D. 1875, under which appellee is proceeding, does not make just and reasonable provision for ascertaining the fair value of the property sought to be condemned.

The first question that arises in the discussion of the above proposition is, Is the tribunal authorized by the act of the

legislature fairly constituted? for if it is not, then section 130 of said act is unquestionably void.

Section 17 of the bill of rights of the state of Texas provides that no person's property shall be taken, damaged or destroyed for, or applied to, public use, without adequate compensation, without the consent of the owner. And section 19 provides that no citizen of this state shall be deprived of life, liberty or property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. Const. of Texas, p. 2.

By these two provisions of the bill of rights the property of the citizen is prohibited from being taken for public use without his consent, without adequate compensation. And when thus taken it must be according to the due course of the law of the land.

It will be seen that the inhibition extends to the state itself, and as a matter of course applies with greater force when the state has delegated its right of eminent domain to a corporation to be used in the interest of the general public, or for the benefit of the people residing in some particular locality of the state. And it follows, as a logical deduction, that the adequate compensation thus guaranteed must be ascertained by the due course of the law of the land, or the appropriation of the property of the owner to the public use will be in violation of the plain letter of the constitution. Adequate is defined in Webster's unabridged dictionary as meaning "equal, proportionate, correspondent to, fully sufficient." And as used in the bill of rights, it evidently means that the compensation shall fully equal in value the property appropriated. Considering the limited knowledge of man, and the imperfections of human nature, it would clearly be impossible for the legislature to devise a law by which adequate compensation would in every instance be secured to the owner of property for his property appropriated to public use. But the framers of the constitution, when they declared that private property should not be taken for public use without adequate compen-

sation paid or secured to the owner, such compensation to be ascertained according to the due course of the law of the land, enjoined upon the legislature that it should enact laws reasonably calculated to insure such property owners adequate compensation for their property, before authorizing its condemnation to the public use.

The law provides for appraisers only in the event that the city and the owner of the property to be condemned cannot agree as to the price. The commissioners under the act are appointed solely at the instance of the city after a controversy has arisen between it and the property owner. The appraisers are appointed for a single purpose only, and when that purpose is accomplished their function is at an end. They are under the supervision of no one; their power over the subject matter is imperial; from their decision there is no appeal, whatever may be the amount in controversy. This tribunal is constituted solely by one of the parties to a controversy, to determine the very matter then in dispute. The only qualification required is that the appraisers be disinterested freeholders of the city.

We understand by the term disinterested, simply that the appraisers have no interest in the property to be condemned, and that they are not of kin to the owner. The law does not require that these appraisers should be learned in the law; it does not require that they should have knowledge, skill or experience in valuing land, or in estimating the damage that the remainder of the tract might sustain by reason of the appropriation of a part. It does not require them to hear, or at least to be governed, by evidence as to the value of the land condemned, or as to what damage the remainder will sustain. It does not give them even the power to compel the attendance of witnesses. The oath to be administered to these freeholders clearly shows that they are simply to act as appraisers. The act declares in plain words, that after hearing the parties they shall appraise the property, etc. The term appraisers has a well known signification. It means persons designated

to value property according to their own judgment; not that they shall value the same according to the evidence adduced before them. Their duty is ministerial and in no sense judicial. Appraisers are almost daily appointed under our probate laws to value property. They make the appraisement according to their own knowledge and judgment. They no doubt often inquire into the opinions of others in reference to the matter, but it is their private individual judgment that the law demands; so here the act provides that they shall hear the parties, but requires them to appraise the property, and by no latitude of construction can this mean, as we think, that they shall determine the damages sustained by what the parties may say about it, or any one else that either party may have before them to make a voluntary statement either under oath or without being sworn. The most that can be said is that the appraisers may take these voluntary statements into consideration if they see fit to do so. Nothing in the act requires them to do so in making up their decision.

We venture the assertion that there has never been a jury law enacted in this or any other state that provided that one party to a controversy, whether that party be a state, a corporation or a private individual, should have the selection of the entire jury, and that the adverse party should have no voice in the matter.

If the act of the legislature in question does not confer upon the appraisers effectual means to ascertain what compensation the property owner is entitled to for the loss of his property appropriated to public use, then it is clear that the appraisers have no power to determine this question. It is a well established rule of construction that when a special tribunal is created with limited powers and for a particular purpose, that tribunal must derive all of its powers from the act creating it. The act creating it being in derogation of the general law of the land, such tribunal must act within the scope of the powers conferred by the act itself. When an act of parliament gives authority to one person expressly, all

others are excluded.   A special power is always to be strictly
pursued.   Potter's Dwarris on Stat. and Const., p. 275, note
5; 1 Dillon on Mun. Corp., p. 449, sec. 359.

In Potter's Dwarris on Statutes and Constitutions, p. 386,
it is said: "So it is doubtless true, that while it belongs to
the legislative department to determine and declare the pro-
priety of the exercise of this power of the right of eminent
domain, they cannot exercise it beyond the scope of the line
of necessity, and an abuse of its exercise can doubtless be
controlled by the judicial power.   The necessity upon which
the exercise of legislative power depends, relates to the use
and the nature of the property.   Should the legislature, either
by a direct exercise of the power or through some subordinate
agency under a power conferred by them, abuse the authority,
by using it irregularly, oppressively or in bad faith, there can
be no doubt of the power of the courts to furnish an effectual
remedy against such acts."   See the case of Giezy *v.* C. W. &
Z. R. R. Co., 4 Ohio St., 325; see also 2 Dillon on Mun. Corp.,
p. 561, sec. 461.

*Throckmorton, Brown* and *W. H. Garnett* for appellee.

I.  The law under which the proceeding was had is constitu-
tional.   The legislature had the power to confer this power
upon the town corporation.   Sedgwick on Const. and Stat. Law,
453; Dillon on Mun. Corp., § 467.

II.  The expediency or necessity can only be determined by
the town council.   See the act of incorporation, acts 14th Leg.,
150, sec. 130; Dillon on Mun. Corp., § 465; Sedgwick on
Const. and Stat. Law, 443.

III.  The provisions of the constitution relative to trial by
jury does not relate to this character of case.   And the provis-
ion of the charter, sec. 130, for assessing the damages, having
provided a just and fair mode of trial, is valid and binding.
Dillon on Corp., § 483; Cooley's Const. Lim., 563.

IV.  So long as the city keeps within its charter it will not
be interfered with by the courts.   Dillon on Corp., § 478.

BONNER, ASSOCIATE JUSTICE.—The city of McKinney having condemned part of the homestead property of appellant Rhine for the purpose of opening a street within the corporate limits, under sec. 130, general incorporation act, approved March 15, 1875 (Laws second session 14th Leg., 150, re-enacted by Revised Statutes, art. 478), he sued out an injunction to restrain further proceedings, which on motion was dissolved. Rhine not desiring that his petition be continued over for further hearing as an original bill, the same was dismissed, and this appeal taken.

At a former term the previous submission was set aside, and the cause referred to counsel for further brief and argument upon the following, among other points:

"Does the statute under which appellee claims authority to condemn appellant's property for public use, make just and reasonable provision for ascertaining the fair value of the property condemned, or the enforcement of the payment of the amount awarded him, in this, that by the statute the value of the property is to be ascertained and determined by commissioners appointed and selected altogether by the city for whose use the property is taken."

So much of this section of the statute as is necessary for the purposes of this opinion, provides that when the city shall determine that it is necessary to take private property for opening any public street, and the amount of compensation cannot be agreed upon, the city council shall, upon its own motion, or upon the application of the owner of the property, appoint three disinterested freeholders of the city, who, after having been sworn, and after having heard the parties at a designated time and place, shall determine the amount of compensation, and report the same to the city council.

It is objected upon other grounds that the commissioners are appointed *ex parte* by the city council alone, and selected from freeholders of the city; that this is not such fair and impartial tribunal as is guaranteed by the constitution, which

provides that no one shall be deprived of his property except by due process of law, and that private property shall not be taken for public use without just compensation therefor.

It is a general rule of law, founded upon the weakness of human nature, and in accord with that invocation given us by divine wisdom, " Lead us not into temptation," that no man should be judge in his own cause; and, for a like reason, it would follow that no one, without the consent of the other party, should appoint his own judge.

No system of human laws, however, is absolutely perfect, and in the actual administration of government, exceptions, more theoretical than practical, have been made to this general rule.

It is of frequent occurrence, that judges who represent the sovereign power of the state, district, county or municipality, preside over cases in which the state, district, county or municipality are parties and have a direct interest. Jurors determine cases in which their verdict may indirectly decrease their own burden of taxation. Witnesses, even under the strict rules of evidence formerly in force, were not disqualified in such cases.

These exceptions are based upon the reason that the individual interest in such cases is supposed to be so remote and insignificant as not to be sufficient to affect the judgment or influence the conduct of the judge, juror or witness. Cooley's Const. Lim., 412; Peck *v.* The Freeholders of Essex, Spencer's R. (N. J.), 457; Commonwealth *v.* Emery, 11 Cush., 406; Commonwealth *v.* Ryan, 5 Mass., 90; Commonwealth *v.* Reed, 1 Gray, 472. But this rule should apply only to those regular tribunals created under the constitution and laws to decide all controversies for the general public which may come within their appropriate jurisdiction.

Thus selected as a class for the determination of a certain character of litigation generally, without reference to that pending or which may be instituted, any interest in questions which may affect them only indirectly, as individual members

of the body politic, is considered, upon the ground of public necessity, so remote as not practically to disqualify them.

As special tribunals, however, like the one constituted by the act under consideration, are selected for the particular matter in controversy, and are exceptions to the ordinary mode of procedure, no presumptions will be indulged in favor of the legality of their appointment or proceedings. Particularly should this be the case where an inferior branch of the body politic exercises two among the highest prerogatives of sovereignty: that of the right of eminent domain, to condemn private property, and the consequent right of taxation, to pay its assessed value. Dillon on Mun. Corp., §§ 467, 468, 470, 481; Cooley's Const. Lim., 528.

Although there is a long line of decisions which settle conclusively the question that in the assessment, under the right of eminent domain, the party whose land is sought to be condemned is not entitled, as a matter of right, to a trial by jury, unless given by express terms in the constitution or law, yet the proceeding is judicial in its character, and should be before an impartial tribunal, under the usual rights and privileges which attend judicial investigation. Cooley's Const. Lim., 562; Powers *v.* Bears, 12 Wis., 214.

The proceeding being summary in its character, is the greater reason why the tribunal should be impartial.

By above provisions of this section of the statute, the city council have the exclusive right to select the appraisers, not even restricted, as under some charters, to a selection by ballot; and no right of appeal is given.

In a case originating in proceedings to widen a street in the city of Milwaukee, the supreme court of the state of Wisconsin, in commenting upon a provision in the charter of that city similar in principle to the one now before the court, says:

"It must be obvious that a proceeding under this charter to condemn and set apart property belonging to an individual for the use of the public, is an adversary proceeding, wherein

the municipal corporation of the city of Milwaukee, repre-
senting the public, is a party on the one side, and the person
whose property it is proposed to take is a party on the other
side.   By the 20th section, it will be seen power is given the
common council to appoint jurors in the place of any one
who may neglect or refuse to serve of those first appointed
by the judge, whose duty it is to determine the amount of
damages to be paid the owner of the land.   A majority, or
even all the jurors selected to establish the necessity of taking
the property, may refuse to act in fixing the amount of dam-
ages, in which case the common council, one of the parties
*ex parte,* may appoint a jury, which shall determine the amount
of damages the city must pay.   It is impossible to comment
in a proper manner upon such a provision, which confounds
all our notions of fairness, justice and right.   Nor does it
improve the character of the provision to find that the award
of the jury thus selected must be confirmed by a resolution of
the board of the common council before it is binding, and that
the action of the board is conclusive and final upon the rights
of the parties interested therein, and from which there is no
appeal."   Lumsden *v.* Milwaukee City, 8 Wis., 494.

In ordinary trials, even when the state is a party and conse-
quently the public interested, the right of challenge to jurors
is allowed.   In this summary proceeding, the commission
acts both as court and jury, and it is certainly in consonance
with the general policy of our system of government, that the
appointment should be made by some authority as far re-
moved as practicable from any undue influence, bias or preju·
dice.   This, for all practical purposes, could readily be done by
some of the established tribunals not directly connected with
the municipality.   In any event, it would not seem to be a
fair and impartial mode to have the appointment made,
*ex parte,* by the corporation to be benefited, and in which ap-
pointment the owner of the property taken, and for the loss
of which the constitution guarantees just compensation, has
no voice, and particularly where there is no remedy given, by

appeal or otherwise, to have the award of the commissioners reviewed.

In this connection it is worthy of note that by preceding section 117 of the same act (Laws second session 14th Leg., 145; R. S., art. 465) for the assessment of damages occasioned from the destruction by public authority of private property, to prevent the spread of a conflagration, the claimant has the right to appoint one of the commissioners, the city council a second, and those two, thus selected, a third. A similar mode has long been established by our statute for the selection of the ordinary commission of arbitration. Hart. Dig., arts. 10–12; R. S., arts. 43–50.

Although the interest of the individual members of the corporation might be so remote as not to disqualify them to act when properly appointed, yet their selection should be made by such mode as would reasonably be fair and impartial alike to both parties. Neither alone should have this exclusive right.

Those provisions in the constitution which relate more directly to the protection of the inalienable rights of life, liberty and property, should be upheld with a strong hand, and although we in any case reluctantly declare an act of the legislature unconstitutional, yet as the courts are the last resort for the legal protection of the just rights of the citizen, and as we believe that the section of the statute under consideration does not afford that protection, we feel constrained to declare it unconstitutional.

Judgment reversed and cause remanded.

                              REVERSED AND REMANDED.

[Opinion delivered May 18, 1880.]