### G. N. DILWORTH v. THE STATE.

*No. 709.   Decided June 10th, 1896.*

**Maintaining Fence Without Gateway—Constitutional Law—Taking Property Without Compensation—Due Process.**

Art. 974, Penal Code, provides, "If any person or persons shall build or maintain more than three miles lineal measure of fencing running in the same general direction without providing such gateway (a gate eight feet wide) he shall be deemed guilty of a misdemeanor.   Held: Unconstitutional and void, because it is violative of (1) Art. 1, Sec. 17, of the Constitution, which provides that, "No person's property shall be taken, damaged or destroyed for, or applied to public use, without adequate compensation; unless, by consent of such person; and when taken, except for the use of the State, such compensation shall first be made or secured by a deposit of money."   (2) Art. 1, Sec. 19, of the Constitution, which provides, that, "No person shall be deprived of life, liberty, property, etc., except by the due course of the law of the land."   (3) Because the article impliedly gives the public an easement in, and right to pass over private lands.   (4) It requires the owner to erect and maintain gates on his own property, and at his own expense, for others' use, and punishes him for failure to do so.   (5) The statute makes no provision for condemning the property of the fence owner for public use.

APPEAL from the County Court of Wilson.   Tried below before Hon. A. R. STEVENSON, County Judge.

This appeal is from a conviction for building and maintaining more than three miles, lineal measure, of pasture fence, running in the same direction, without a gateway in the same, the punishment being assessed at a fine of $25.

The charging part of the information is set out in the opinion.

No statement necessary.

*Rudolph Kleberg* and *George Burgess*, for appellant:—The judgment in this cause is void because the statute under which this conviction was obtained is contrary to and violative of Secs. 17 and 19 of Art. 1, of the Constitution of the State of Texas.   Sec. 17, Art. 1, Constitution of Texas.   Bell Line Street Ry. Co. v. J. L. Crabtree, 2 Tex. Crim. App., Civ. cases; Ry. Co. v. Eddins, 60 Texas, 656; Ry. v. Fuller, 63 Texas, 467; Bounds v. Kirven, 63 Texas, 161; Ry. v. Hall, 78 Texas., 169; Rosenthal v. Ry., 79 Texas, 327; Ry. v. Downie, 82 Texas, 385; Cooper v. City of Dallas, 83 Texas, 241; City of Fort Worth v. Howard, 3 Tex. Civ. App., 539; Wooldridge v. Eastland

County, 70 Texas, 680; Aggs v. Shackleford County, 85 Texas, 147; Cunningham v. San Saba County, 1 Tex. Civil App., 480; McIntire v. Tucker, 77 Texas, 259; Evans v. L. S. & S. L. Co., 81 Texas, 622; Dulany v. Nolan County, 85 Texas, 225; Hopkins v. Cravey, 85 Texas, 189; Cummings v. Kendall County, 26 S. W. Rep., 439; Davidson v. State, 16 Tex. Crim. App., 336; Thompson v. State, 22 Tex. Crim. App., 328; Bradley v. State, 22 Tex. Crim. App., 330; Arts. 4359 to 4390c, Rev. Stat.; Cooley on Const. Lim., Secs. 528, 529, 530, 531, 532, 533 and 559, 3rd Ed.; Rhine v. City of McKinney, 53 Texas, 354.

No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. The statute makes no provision for condemning these lands or compensating the owners for putting the gateways in their fences, but unless they do so, they are subject to arrest and punishment. Penal Code, Arts. 973 and 974. Sec. 19, Art. 1, of the Constitution of Texas; Grigsby v. Peak, 57 Texas, 142; Jones v. Montes, 15 Texas, 353; Ry. Co. v. Ferris, 26 Texas, 589; Armstrong v. Traylor, et al, Sup. Ct., April, 1895; Cooley Const. Lim., 393, 3rd Ed.

*Mann Trice*, Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

DAVIDSON, JUDGE.—Omitting the formal parts of the information in this case, it charges that the appellant "did then and there unlawfully build and maintain more than three miles, lineal measure, of pasture fence, running in the same general direction, without a gateway in the same, against the peace and dignity of the State." The statement of facts is an agreement to the effect that the allegations in the information are true. Appellant on the trial was convicted, and fined in the sum of $25, and from this conviction he appeals. Appellant contends that the judgment should be reversed, and the prosecution dismissed, because the law under which he was prosecuted and convicted is violative of Secs. 17, 19, Art. 1, of the State Constitution. This article is familiarly known as the "Bill of Rights." His two general propositions may be embodied in this statement—that Art. 974 of the Rev. Penal Code is violative of said sections of the bill of rights, in that it seeks to take the property of the citizen without compensation, and without due process of law. Sec. 17 of Art. 1 of the Constitution reads as follows: "No person's property shall be taken, damaged or destoyed for or applied to public use, without adequate compensation made, unless by the consent of such person, and when taken, except for the use of the State, such compensation shall be first made or secured by a deposit of money. * * *" Section 19 provides: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Art. 974, Rev. Penal Code 1895, is as follows: "If any person

or persons shall build or maintain more than three miles, lineal measure, of fencing, running in the same general direction, without providing such gateway, he shall be deemed guilty of a misdemeanor." The preceding article describes the character of gateway to be constructed in the line of fencing. These statutes were evidently intended to provide passage or road ways through the fences and across the inclosed pasture land of the party building such fences, and it was also evidently intended that the owner of this fencing should create or give easements and right of travel across his lands through these gateways. It is further evident that these easements are to be taken from the owner, not only without compensation, but against his consent; and not only so, but he was required, at his own expense, to build these necessary gateways, in addition to furnishing, free of charge, the right of passage across his land, and upon his failure to do so is to be punished. Property of the citizen, in this State, cannot thus be taken and appropriated, even though it be for the use of the public. There is no rule of law in this State, constitutional or otherwise, but what prohibits, or ought to prohibit, the taking of private property of one individual for the private use of another individual, or set of individuals. That the lands of the citizen may be taken, under the right of eminent domain for public highways, is well established, and is necessary for public convenience; but, even when taken for the public, it is a requisite that the owner be recompensed by adequate compensation, and our constitution and laws have carefully guarded this matter, and pointed out the manner and the means by which the property of the citizen may be thus set apart for public travel or public usage. "The right of eminent domain implies that the purpose for which it may be exercised must not be a mere private purpose; and it is conceded on all hands, that the legislature has no power, in any case, to take the property of one individual, and pass it over to another without reference to some use to which it is to be applied for the public benefit. The right of eminent domain does not imply a right in the sovereign power to take the property of one citizen, and transfer it to another or to his use, even for a valuable consideration, where the public interests will be in no way promoted by such transfer. It seems not to be allowable, therefore, to authorize private roads to be laid out across the lands of unwilling parties by an exercise of this right. The easement in such a case would be the property of him for whom it was established, and, although the owner would not be deprived of the fee in the land, the beneficial [use and exclusive enjoyment of his property would, in greater or less degree, be interfered with. Nor would it be material to inquire what quantum of interest would pass from him. It would be sufficient, that some interest, the appropriation of which detracted from his right and authority, and interfered with his exclusive possession as owner, had been taken against his will, and if taken for a purely private purpose, it would be unlawful. Nor could it be of importance that the public would receive incidental benefits such as usually spring from the improvement of lands, or the establishment of prosperous private enter-

prises.  The public use implies a possession, occupation, and enjoyment of the land by the public at large, or by public agencies; and a due protection to the rights of private property will preclude the government from seizing it in the hands of the owner, and turning it over to another, on vague grounds of public benefit to spring from the more profitable use to which the latter may devote it." Cooley, Const. Lim. (4th Ed.), § 531.  While the right of eminent domain may be reserved in the State, or exercised under proper legislation, and roads, highways, and thoroughfares may be provided for the convenience of the people, yet property, when thus taken, must be taken for the benefit and use of the public, and not for private individuals.   This is necessary for the wants of travel and traffic.   If the legislature, under the article under which the appellant was indicted and convicted, intended to take the property of the citizen for the use of private parties living near and adjoining this fence, and simply for their benefit, then the law would have no standing at all.   If it was intended thereby to take it for public use, it would be necessary to lay out roads and provide gateways, under the different articles of the Civil Statutes making provisions for third-class roads.   This is not done, nor intended to be done, by the article under discussion.   Not only was adequate compensation not made or provided for under this article, but the property was set aside at the expense of the owner; and, upon his failure to provide the gateways through his pasture, along the line of fencing, he is to be punished for not so providing such gateways, and is afforded the privilege of paying out of his own pocket for this incumbrance.   It would hardly be a tenable position, in view of the constitution of our State, to assume that the private property of the citizen can be taken in this manner; for if so, he is not only made to give up or donate to the public his individual property, but is burdened with the extra expense of providing gateways at his own expense, and punished for a failure to do so.   This is so plainly violative of those guarantied rights reserved by the citizenship of this State to themselves, that we deem it unnecessary to discuss this question further.   Where roadways and gateways are necessary for public use, ample authority has been provided by legislative enactment for securing the same.   These statutes are full and explicit as to the manner and means of condemning the property of the private individual for public use.   For a discussion of the questions pertaining to the matter at issue, the following authorities are cited:  Davidson v. State, 16 Tex. Crim. App., 336; Thompson v. State, 22 Tex. Crim. App., 328; Bradley v. State, 22 Tex. Crim. App., 330; Cummings v. Kendall Co. (Tex. Civ. App.), 26 S. W. Rep., 439; Hopkins v. Cravey, 85 Texas, 189; Dulaney v. Nolan Co., 85 Texas, 225; McIntire v. Lucker, 77 Texas, 259; City of Ft. Worth v. Howard, 3 Tex. Civ. App., 539; Wooldridge v. Eastland Co., 70 Texas, 680; Railway Co. v. Downie, 82 Texas, 383; Bounds v. Kirven, 63 Texas, 161; Railway Co. v. Fuller, Id., 467; Rosenthal v. Railway Co., 79 Texas, 327; Aggs v. Shackelford Co., 85 Texas, 147; Rhine v. City of McKinney,

53 Texas, 354; Cooley, Const. Lim. (4th Ed.), §§ 528-533, 559. And many other authorities can be cited in support of the same proposition. In view of what has been said, it will be unnecessary to discuss the second proposition, that the property has not been taken by due process of the law of the land. The statute under which appellant was indicted makes no provision for condemning the property of the fence owner for public uses. As we understand the law of this State, Arts. 973 and 974 of the Revised Penal Code are. clearly in violation of Sections 17 and 19 of the bill of rights, and therefore void. For the reasons indicated, the judgment is reversed, and the prosecution dismissed.

*Reversed and Dismissed.*