

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

Distinguished by H-15

See 50 Tex. L. Rev. 931 (May 1972)

January 6, 1972

Honorable Bob Bullock
Secretary of State
Austin, Texas 78711

Opinion No. M- 1039

Honorable Clyde Slavin
County Attorney of Donley County
Clarendon, Texas 79226

Honorable Jack K. Williams
President, Texas A & M University
College Station, Texas 77843

Honorable Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas 78711

Honorable Charles R. Barden
Executive Secretary
Texas Air Control Board
Austin, Texas 78751

Re: Scope, constitutionality, and effect of House Bill 203, 62nd Leg., Reg. Sess., 1971, amending Articles 6252-9, V.C.S., the Texas Ethics Code.

Gentlemen:

We have received five opinion requests relating to the scope, constitutionality, and effect of House Bill 203,[1] amending Article 6252-9, Vernon's Civil Statutes,[2] the Texas Ethics Code. We have concluded that House Bill 203 is unconstitutional in its entirety for reasons we will hereinafter set forth in detail before passing upon those questions which we hold remain governed by the valid provisions of Article 6252-9, the original Texas Ethics Code enacted in 1957.

---

[1]Acts 1971, 62nd Leg., Reg. Sess., ch. 962, pp.2906-12.

[2]Acts 1957, 55th Leg., ch. 100, p. 213-15.

-5073-

Two inquiries submitted by the Honorable Bob Bullock, Secretary of State and by the County Attorney of Donley County asked whether Sections 4(o) and 4(e) of House Bill 203 are constitutional. Section 4(o) reads as follows:

"On or before the last Friday of April of each calendar year, each elected state official and appointed state official and each state employee or legislative employee if such legislative or state employee's annual salary from the State of Texas exceeds $11,000, shall file with the Secretary of State a financial statement which shall be a public record covering sources of income, acquisitions, investments, and divestments obtained or consummated during the preceding calendar year of the individual filing the statement, and his spouse, and shall be in the following form:

FINANCIAL STATEMENT

For the period _____ to_____
Name _____
Address_____

Office or position in the government of the
State of Texas_____

For your information: The interests or items required to be disclosed in this statement include those of yourself and your spouse. The term business entity means any person, corporation, firm, partnership, joint stock company, receivership, trusteeship, or any other entity recognized by law through which business for profit may be conducted.

1. List of all sources of income to be identified by employer and/or if a person is self-employed, by the nature of his business._____

2. List of real property acquired or sold during the reporting period._____

3. List of all stocks, bonds, or other commercial paper acquired or sold during the reporting period.

_____

4. List of all other assets acquired during the reporting period. _____

_____

5. List of all liabilities originally incurred during the reporting period to any institution regulated or controlled by the State of Texas or the Federal Government._____

> I swear that the information given above is true to the best of my knowledge and belief.

"

_____          _____
     Date                      Signature

Section4(e) reads as follows:

"If any person covered under this Act or such person's spouse or a dependant is an officer, agent, financial associate or member of, or owns a substantial interest, directly or beneficially in any activity which is subject to the jurisdiction of a regulatory agency of this State, a record of such relationship or substantial interest shall be made a matter of public record by filing with the Secretary of State annually by January 31st."

The Secretary of State further asked whether, if Sections 4(o) and (e) are unconstitutional, he has any duties under the provisions of Section 4(q) of Senate Bill 15, Acts 1971, 62nd Leg., 1st C.S., p. 3442, ch. 10. Section 4(q) reads as follows:

"All political candidates for positions and offices covered by this Act shall file with the Secretary of State a financial statement which

> shall be a public record covering sources of
> income, acquisitions, investments, and divest-
> ments obtained or consummated during the preceding
> calendar year of the individual filing the state-
> ment, and his spouse, and shall be in the form
> prescribed in Subsection (o) of this section.
> The financial statement shall be filed within
> 15 days after the filing deadline for the election
> in which the individual is a candidate."

The caption of House Bill 203 gives no notice that any of the persons covered by its provisions are required to file any kind of financial interest disclosure. It is difficult to see how such detailed financial interest disclosures as those immediately set forth above in Sections 4(e) and 4(o) could have been anticipated by a caption which provided merely for "establishing standards of conduct", "prohibiting certain acts", "making procedures in the State Ethics Commission", and "providing penalties". The caption of Senate Bill 15 does declare that it relates "to the filing of financial statements by candidates for certain offices...." It fails to give any notice that said financial statements shall embrace the assets belonging to a candidate's spouse as is required by Section (q). We therefore think that there has been no compliance with Article III, Section 35 of the Texas Constitution, which requires that the subject of all acts shall be stated in the caption, and that these provisions must fall for this reason.[4]

However, if such financial interest disclosures be deemed ancillary or consistent with the prescribing of

---

[4]Article III, Section 35, Texas Constitution; State v. McCraken, 42 Tex. 383 (1875); Gunter v. Texas Land & Mortgage Company, 82 Tex. 496, 17 S.W.840 (1891); English & Scottish-American Mortgage Co., Ltd. v. Hardy, 93 Tex. 289, 55 S.W. 169 (1900); Board of Water Engineers v. City of San Antonio, 155 Tex. 111, 283 S.W.2d 722 (1955); Schlichting v. Texas State Board of Medical Examiners, 310 S.W.2d 557 (Tex.Sup. 1958); Harris County Fresh Water Supply District No. 55 v. Carr, 372 S.W.2d 523 (Tex.Sup. 1963); Fletcher v. State, 439 S.W.2d 656 (Tex.Sup. 1969); White v. State, 440 S.W.2d 660 (Tex.Crim. 1969).

standards of conduct for persons covered by the Act, there
are other compelling reasons which necessitated holding
the foregoing sections of House Bill 203 unconstitutional.
A case squarely in point is City of Carmel-by-the-Sea
v. Young, 466 P. 2d 225 (California 1970).  The Court held
invalid a similar financial interest  public disclosure
statute directing every public official and candidate
to file as a public record a statement describing the
nature of his investments in excess of $10,000.00, as well
as those owned by his spouse or a minor child.  The court
recognized as in the public interest proper legislative
concern about possible conflicts of interest between public
employment and private financial interests, but held that
the disclosures required by the statute were unconstitutionally
overbroad.  At pages 230-31, the court said:

> "The concept of personal liberties and funda-
> mental human rights entitled to protection
> against overbroad intrusion or regulation by
> government is not limited to those expressly
> mentioned in either the Bill of Rights or
> elsewhere in the Constitution, but instead
> extends to basic values 'implicit in the
> concept of ordered liberty' (Palko v. State of
> Connecticut (1937) 302 U.S. 319, 325, 58 S.Ct.
> 149, 152, 82 L.Ed. 288) and to 'the basic
> civil rights of man.'  (Skinner v. State of
> Oklahoma (1942) 316 U.S. 535, 541, 62 S.Ct.
> 1110, 1113, 86 L.Ed. 1655.)...
>                * * *
> "Certain of the protected rights and liberties
> not specifically mentioned in the Constituion
> have been viewed as falling within the penumbra
> or periphery of the Bill of Rights, and others
> as being fundamental and basic personal rights
> 'retained by the people' within the meaning of
> the Ninth Amendment.3  (Griswold, supra, at pp.
> 484-485 of 381 U.S., at pp. 1681-1682 of 85 S.Ct.,
> and at pp. 487-499, at pp. 1683-1690 of first
> concurring opinion.) * *
>
> "As plaintiff city points out, the right of pri-
> vacy concerns one's feelings and one's own peace
> of mind (Fairfield v. American Photocopy etc. Co.
> (1955) 138 Cal.App.2d 82, 86, 291 P. 2d 194), and
> certainly one's personal financial affairs are
> an essential element of such peace of mind.

> Moreover, personal financial affairs are clearly
> more than the 'adjunct to the domestic economy'
> referred to in Edwards, supra (p.1149 of 71 A.C.,
> 80 Cal. Rptr. 633, 458 P.2d 713); instead they
> would appear to constitute the primary supporting
> pillar of that economy.  In any event we are
> satisfied that the protection of one's personal
> financial affairs and those of his (or her)
> spouse and children against compulsory public
> disclosure is an aspect of the zone of privacy
> which is protected by the Fourth Amendment and
> which also falls within that penumbra of consti-
> tutional rights into which the government may not
> intrude absent a showing of compelling need and
> that the intrusion is not overly broad. /W/here
> fundamental personal liberties are involved,
> they may not be abridged by the States simply on
> a showing that a regulatory statute has some
> rational relationship to the effectuation of a
> proper state purpose.  "Where there is a
> significant encroachment upon personal liberty,
> the State may prevail only upon showing a sub-
> ordinating interest which is compelling."
> /Citation/. The law must be shown "necessary,
> and not merely rationally related to , the accomplish-
> ment of a permissible state policy."  /Citations./'
> (Griswold v. State of Connecticut, supra, 381 U.S.
> 479, 497, 85 S.Ct. 1678, 1689).  'The breadth of
> legislative abridgement must be viewed in the
> light of less drastic means for achieving the
> same basic purpose.'  (Shelton v. Tucker,
> supra, 364 U.S. 479, 488, 81 S.Ct. 247, 252,
> 5 L.Ed.2d 231.)"

The court held that the disclosures required by the
statutes were unconstitutionally overbroad and intruded into
irrelevant, private financial affairs of the parties covered
by the statute, and were in no way limited to such holdings
as might be affected by the duties or functions of a parti-
cular office.  The court took cognizance of the fact that
a requirement of relevant disclosures of investments or
assets which bear a relationship to the valid purpose of
preventing conflicts of interest on the part of public
officers and employees could be, and had been in many cases,
validly drawn.  At pages 233-35, the court said:

"... Those various enactments can be roughly divided into two categories. The first group simply restricts public officials and employees from entering into transactions which may cause a conflict of interests. The second group requires an actual disclosure of any conflict of interest <u>relevant</u> to the <u>official duties</u> of the officer or employee. /Emphasis supplied./

* * *

"Thus although there are individual differences between the disclosure laws discussed above, there is clearly one common element in all of them. The regulations prohibiting conflicts of interest and requiring the disclosure of financial holdings are limited to only those transactions or holdings which have some relationship, direct or indirect, to the official duties of the public officer or employee. ...

* * *

"We are satisfied that in light of the principles applicable to the constitutional rights here involved, no overriding necessity has been established which would justify sustaining a statute having the broad sweep of the one now before us, which, as stated, would intrude alike into the relevant and the irrelevant private financial affairs of the numerous public officials and employees covered by the statute and is not limited to only such holdings as might be affected by the duties or functions of a particular public office. ...Furthermore, the price which the state and the local agencies of government would be expected to pay, should the constitutionality of such a statute be sustained, in the exodus of competent officials from public office and the dispiriting effect on the willingness of other competent citizens to take on the burdens of public office, far outweighs any legitimate public interest to be served."

It is evident that Sections 4(e), (o), and (q) of House Bill 203 and Senate Bill 15 are neither broad prohibitions of conflicts of interest nor requirements of actual disclosure of such interests as are per se in conflict with the office or position held or sought. Further, we think that the unconstitutionally broad requirements of the financial and personal relation disclosure provisions of Senate Bill 15 and of House Bill 203 are such an integral part of the regulatory scheme of House Bill 203 as to eliminate any possible severance of these unconstitutional portions from the balance of the bill. Texas Highway Commission v. El Paso Bldg. & Const. Trades Council, 149 Tex. 457, 234 S.W. 2d 857 (1950); Simmons v. Arnhim, 110 Tex.309, 220 S.W. 66 (1920); Central Education Agency v. I.S.D. of City of El Paso, 152 Tex. 56, 254 S.W.2d 357 (1953).

We might be inclined to make a further effort in this regard were we not faced with an additional unconstitutional section. Section 8 of House Bill 203 provides for the establishment of a State Ethics Commission which is to consist of three members of the Senate, elected by the Senate; three members of the House of Representatives; two persons appointed by the Chief Justice of the Supreme Court of the State of Texas; two persons appointed by the Presiding Judge of the Court of Criminal Appeals of the State of Texas; and two persons appointed by the Chairman of the State Judicial Qualifications Commission. Paragraphs (h) and (i) of Section 8 read as follows:

> "(h)  The commission shall have full investigatory powers and subpoena powers; however, no subpoena may be issued pertaining to any investigation until the commission adopts a resolution by a majority vote of the members of the commission defining the nature and scope of the investigation.

> "(i)  Actions of the commission require the concurrence of majority of the members, including the concurrence of two members from the same House when the action pertains to that House or a member of that House."

It is evident from reading the foregoing that, in the exercise of the Commission's full investigatory powers, the balance against a legislative investigation or the investigation of a member or members of the Legislature is weighted against such investigations as opposed to other investigations authorized by the Act. This is so because of the fact that the 12 members of the Commission, six members are members of the Legislature, who, by voting in unison, could prevent obtaining the majority vote necessary to institute a legislative investigation or the investigation of a member or members of the Legislature. Further, there is the requirement of the concurrence of two members of the same house when the investigation pertains to that house or a member thereof.

Although the foregoing is only a possibility, it amounts to a protection not accorded others covered by the provisions of the Ethics Code and is therefore violative of the equal protection clauses of both the Federal and State Constitution. It clearly operates unequally on members of the various classes within the scope of the Act, and is sufficient to render the entire bill unconstitutional. It cannot be obliterated from the Act since it goes to the enforcement of the Act, itself, and would leave no plan of operation for the Ethics Commission which it purports to create. As a result, it would be necessary to attempt a wholesale rewriting of this portion of the state, a legislative function which no court would undertake to do. Texas Highway Commission v. El Paso Bldg. & Const. Trades Council, 149 Tex. 457, 234 S.W.2d 857 (1950).

Another reason for holding House Bill 203 unconstitutional is that its Section 4, 5 and 6 are wholly invalid because these penal provisions violate Articles 6 and 7 of the Texas Penal Code. The new statute is vague, indefinite and therefore void. Overt v. State, 260 S.W. 856 (1924); Ex Parte Meadows, 109 S.W.2d 1061 (1937); Sportatorium v. State, 115 S.W.2d 483 (Tex.Civ.App. 1938, error dism.).

The Comptroller of Public Accounts has asked three questions relating to Section 4(k) of House Bill 203, which, in view of the invalidity of 4(k), are governed by Section 3(i) of Article 6252-9 as enacted in 1957. Section 3(i) reads as follows:

"No officer or employee of a state agency nor
any firm, association, corporation or other business
entity in which he is a member, agent, or
officer, or in which he owns a controlling
interest, shall sell goods or services to any
person, firm, association or corporation which
is licensed by or regulated in any manner by
the state agency in which such officer or
employee serves."

The Comptroller's questions are the following:

"1.  A is a large department store which is
issued a sales tax permit and a store tax
license by the Comptroller, and makes regular
sales tax reports and payments.

Can an employee of this department work for
A as a part-time sales clerk exercising no
degree of management?

2.  B is a gun shop which is issued a sales
tax permit, a store tax license and a pistol
dealers license by the Comptroller.

Can an employee of this department sell his
private gun to B?

3.  C is a used car dealer which is issued a
store tax license by the Comptroller.

Can an employee of this department sell his
private automobile to C?"

In deciding these questions, we note at the outset that
Texas is among many states that have enacted a wide
variety of statutes regulating specific public servants
in specific areas of potential conflict of public and
private interests.  Such statutes are valid where the
public interest is sufficient to justify the particular
requirement or prohibition, and there is no unwarranted

interference with fundamental individual rights or constitutional guarantees of personal freedom.[5]

The common every day occurences typified by the Comptroller's three submitted questions must have arisen and been approved by the Comptroller in the absence of any conflict of public and private interests on innumerable occasions during the fourteen years he has been charged with the duty of complying with the provisions of the Ethics Code. Since there has evidently been no doubt as to the propriety of the types of employee actions covered in the submitted questions prior to the 1971 amendment, we must assume that the consistant departmental construction has been to permit such activities absent forbidden conflicts of interest. We are in accord with this departmental construction.

The general Declaration of Policy contained in Section 1 of the 1957 Act declares that the public servants covered by the Act shall have no interest of any kind, direct or indirect, or engage in any business transaction or professional activity, or incur any obligation of any nature which is in substantial conflict with the proper discharge of his duties in the public interest. It announces that it is for the implementation of such policy and to strengthen the faith and confidence of the people of Texas in their government that the Code of Ethics is enacted. It states that the Code shall serve not only as a guide for official conduct of the State's public servants, but also as a basis for discipline for improper conduct.

---

[5]All men have certain basic or natural rights which are inherent and inalienable, are generally enumerated in a Bill of Rights of life, and are protected against invasion of government or any branch thereof. 16 C.J.S. 975. Constitutional Law § 199. Rights of life, liberty and property are inherent rights merely reaffirmed in the Constitution and restricted only as voluntarily surrendered by the people and their government. 12 Tex. Jur. 2d 432, Constitutional Law § 85, Rhine v. McKinney, 53 Tex. 354 (1880).

Based primarily upon the Declaration of Policy as a declaration of legislative intent, and predicated upon an initial fact finding that in each of the submitted questions there is no conflict between public and private interests,[6] we answer all three questions in the affirmative.

In holding that an employee of the Comptroller's Department may work as a "part-time sales clerk exercising no degree of management" in the employ of "a large department store which is issued a sales tax permit and a store tax license by the Comptroller,...", we realize that the literal language of the prohibition of Section 3(1) prevents the employee from selling his services to a business entity subject to the Comptroller's regulations. We are cognizant of the elementary rule of law that there is no room for construction of plain and unambiguous language in a staute.[7] Nevertheless, there are numerous well-established exceptions to this rule. One of these is that departure from the literal meaning of a staute will be made where such departure is consistent with and essential to the effectuation of legislative intent.[8]

We do not think that the Legislature intended to absolutely prohibit State employees from holding any additional jobs with a business entity subject in any way to regulation by the employing State agency. It is common knowledge that a State employee might need to augment his income by additional efforts on his part either to raise his standard of living, or, in some cases, even

---

[6]This office does not pass upon questions of fact.

[7] 53 Tex. Jur.2d 174, Statutes, § 123, and authorities cited therein.

[8]An early Texas case, State v. Delesdenier, 7 Tex. 76 (1851), established this Hornbook Rule in Texas and quoted with approval the following at page 105-106:
"   ' A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter;' 'and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers.' (9 Bac. Abr., 247.)"

to exist. Certainly, it has never been the policy of this State to discourage legitimate diligence and industry in its citizens. It would be most unreasonable to conclude that the Legislature intended any such prohibition where the second employment did not affect the employee's compliance with the highest standard of ethics in the proper discharge of his duties to the State. The Legislature is never presumed to intend an unreasonable, absurd or unjust result if the statute may be otherwise construed; and the courts will depart from the literal import when necessary to preserve legislative intent.[9]

Likewise, under the above-stated rule, we hold that the Legislature did not intend for Section 3(1) to prohibit the employee from selling a gun to a gun shop holding a sales tax permit, a store tax license, and a pistol dealer's license; nor from selling his car to a used car dealer having a store tax license. If additional facts exist which indicate a conflict of interest even in such isolated transactions, a contra result would, of course, be reached.

Finally, the answers to all the Comptroller's questions are necessitated by the rule that a statute must be sustained as constitutional wherever possible.[10] If Section 3(1) constituted a blanket prohibition against the right of the individual employee to work elsewhere or transact business dealings with his own property, it would be blatantly discriminatory as to him, and a denial of due process and equal protection of the laws in violation of both the State and Federal Constitutions. A statutory classification which

---

[9] 53 Tex. Jur. 2d 134-135, 187-189, 195-197, Statutes, §§ 126, 134, 135, and authorities cited therein.

[10] 53 Tex. Jur.2d 225-227, Statutes, §182, and authorities cited therein. State v. City of Austin, 160 Tex. 348, 331 S.W.2d 737, 747 (1960).

singles out certain individuals, or classes of individuals, and deals with them arbitrarily and unreasonably in a manner unjustifiably different from other individuals, has many times been held in violation of the 14th Amendment to the Federal Constitution, which specifically pertains to the deprivation of life, liberty and property without due process of law.[11]  And, generally, the term "liberty" as used in the Bill of Rights in various state constitutions, including the Texas Constitution,[12] is as comprehensive as the same term used in the due process clause of the 14th Amendment.[13]  Many Texas cases recognize these fundamental principles as preserved by our Bill of Rights.[14]

The Texas Air Control Board asks whether its Board members or employees may have dealings with companies regulated by the Board.  Texas Agricultural and Mechanical University asks essentially the same questions about faculty members, staff and employees of the University and its various services.  These questions must first be determined by the employing State agency in the manner heretofore discussed in answering the questions submitted by the Comptroller.

The same rule of reasonable analysis of the facts pertaining to the proposed activity of any State Officer or employee would apply to persons connected with Texas Agricultural and Mechanical University, Texas Air Control Board, Donley County Hospital Board Directors, or Notaries Public.  The employing State agency, or those to whom supervision has been confided, must determine whether the

---

[11]16 C.J.S. 976, Const. Law, § 199.

[12]Art. I, Sec. 19.

[13]16 C. J. S. 988, Const. Law, § 202.

[14]12 Tex. Jur. 2d 432-434, Const. Law. § 86-89.

facts of any particular case warrant a finding of fact that the activities of an individual reflect a conflict of interest under Section 3(i) of the 1957 statute.

- S U M M A R Y -

House Bill 203, 62nd Leg., 1971, Reg. Sess., and Senate Bill 15, 62nd Leg., 1st C.S., 1971, ch. 10, p. 3442, which sought to amend Article 6252-9, V.C.S. (Texas Ethics Code) are both unconstitutional. The 1957 Ethics Code, as it existed before these attempted amendments by the 62nd Legislature, is in force as the law of Texas. No financial interest disclosure reports are required under existing law.

Under the 1957 Ethics Code, whether conflicts of interest exist are fact determinations for those who exercise validly delegated super-visory powers.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Roger Tyler and
Marietta McGregor Payne
Assistant Attorneys General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Houghton Brownlee
Gordon Cass
Rex White
Bob Lattimore

SAM MCDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant