TEXAS HIGHWAY COMMISSION ET AL V. EL PASO
BUILDING AND CONSTRUCTION TRADES COUNCIL.

No. A-2799. Decided November 29, 1950.
Rehearing overruled January 3, 1951.
(234 S. W., 2d Series, 857.)

*Price Daniel,* Attorney General, *Joe R. Greenhill, Ned Mc-Daniel, Clinton Foshee,* and *William S. Lott,* Assistants Attorney General, for petitioners.

The Court of Civil Appeals erred in holding that the trial court had jurisdiction of this case. Denver Bldg. and Const. Trades Council v. Vail, 103 Colo. 364, 86 Pac. 2d 267; Ruark v. International Union of Operating Engineers, 157 Md. 576, 146 Atl. 797; Perkins v. Lukens Steel Co., 310 U. S. 113; Alpha Petroleum Co. v. Terrell, 122 Texas 257, 59 S. W. 2d 364; Trapp v. Shell Oil Co., 145 Texas 323, 198 S. W. 2d 424.

*Mullinax, Wells & Ball* and *L. N. D. Wells, Jr.,* all of Dallas, for respondents.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This suit was brought in the District Court of Travis County March 9, 1950, by respondent against the Texas Highway Commission and the Chief Engineer of the Commission seeking an injunction against the petitioners to enjoin the letting by petitioners of a contract for a certain public works in the City of El Paso, Texas, and designated "Main Street Overpass" until Petitioner, State Highway Commission, should properly and correctly determine the "prevailing rate of per diem wages * * * * for each craft or type of workman or mechanic needed to execute the contract", and so specify such wage rate in the call for bids and in the contract. Summarized, the respondent alleged that it was a voluntary unincorporated association of more than 2800 craftsmen and laborers who live and work in El Paso, Texas, or vicinity and that it was an affiliate of the American Federation of Labor existing "for the purpose of maintaining and improving the wages and working conditions of craftsmen and laborers in El Paso, Texas, and vicinity." It alleged the duty of the Highway Commission to ascertain the prevailing rate of per diem wages, etc. under the provisions of Acts, 43rd Leg., Reg. Sess. (1933) p. 91, published in Vernon's Civil Statutes as Art. 5159a, and Vernon's Ann. Penal Code, Art. 1581a. The complaint alleged in substance that the Highway Commission had declared a prevailing wage rate of 75 cents per hour for common laborers to $1.65 per hour for certain skilled labor for this job, but that such determination by the Highway Commission was erroneous in that the rate was actually 85 cents per hour for common labor to $2.50 per hour for certain skilled labor, as was shown by an exhibit attached to the complaint. It was further alleged that the purported wage rate determination (1) has no basis in fact, (2) constituted a gross abuse of discretion and was unlawful and void, because (a) the determination as made did not cover the "locality" of the City of El Paso, but covered a much wider territory, (b) was not based on facts but arbitrarily made without relation to the wages actually prevailing in the El Paso locality, (c) wholly ignored relevant data which had been presented by respondent to petitioners in a hearing held by petitioners on such "prevailing wage" January 26, 1950, and after protest by petitioners to respondent and a request for such hearing, to wit (A) The El Paso City Council, the Commissioners Court of El Paso County, and the Secretary of Labor of The United States had determined the prevailing wage rate as contended for by respondent, (B) the rate actually being paid at the time on highway underpass and bridge construction in the locality, (C) current data from the Texas Employment Commission and affidavits from contract construction employers in the locality.

(d) The Highway Commission under a misconception of their duty had set only a "minimum wage rate" instead of a "prevailing wage rate" as required by said Art. 5159a.

After allegations setting forth the interest of the respondent and its right to bring this suit, the prayer was for citation and a temporary restraining order and temporary injunction enjoining the letting of bids on the "Main Street Overpass" job, unless it was required in the contract that the "prevailing wage rate" be from 85 cents to $2.25 per hour and that on final hearing a permanent injunction against the letting of said contract be granted requiring the Highway Commission to "reconsider and redetermine the prevailing wage rates in the El Paso locality as required by Art. 5159a, Revised Civil Statutes, taking into account the prevailing wage rate determinations made by other public bodies and determining the prevailing wage rates to be not less than those rates received by a majority of the employees in the contract construction industry in the El Paso locality; and, in the event that there is not a majority paid at the same rate, then not less than the rate paid to the greater number, provided such greater number constitutes thirty percent of those so employed; or in the event that less than thirty percent of those so employed receive the same rate then the average rate", and for a declaratory judgment holding the "prevailing wage rate" determination for El Paso County to be "unlawful and void and of no effect." Attached to the complaint was a large number of exhibits showing the "prevailing wage rate" claimed by respondent to be the true and actual "prevailing wage rate" and action of the City, the County, and the Secretary of Labor recognizing such rate as the "prevailing wage rate" for El Paso. This "prevailing wage rate" was the union scale of pay as fixed by contract between the respondent and certain contractors whom respondent denominated as "fair" contractors. The Highway Commission answered by a plea attacking the right and capacity of respondent to bring the suit, and by a plea that under the express provisions of Art. 5159a the determination of the Highway Commission of the prevailing wage rate was made final and there was no appeal from such action. A hearing was duly had on the complaint and answer by the Judge of the 53rd District Court, first on a temporary restraining order—which was granted—and next on a temporary injunction which was refused by the court at the end of respondent's evidence. Appeal was duly taken to the Court of Civil Appeals at Austin, by the respondent herein. The Court of Civil Appeals reversed the judgment of the trial court and held that the action of the Highway Commission fix-

ing the "prevailing wage" was reviewable by the courts under the "substantial evidence rule", and remanded the cause to the trial court with direction to issue the injunction sought if the hearing on the merits developed the same evidence as previously introduced (231 S. W. 2d 533). The Highway Commission applied for writ of error and this court granted the application on point one, towit:

"The Court of Civil Appeals erred in holding that the Trial Court had jurisdiction of this case to review the action of Petitioners under the facts and circumstances."

■ We have studied the record together with the numerous briefs filed herein by all parties and a number of Amici Curiae, and have determined that the action of the Highway Commission in determining and ascertaining the "prevailing wage rate" is final and not reviewable by the courts.

The Constitution of Texas provides in Art. 16, Sec. 24, "The Legislature shall make provision for laying out and working public roads, for the building of bridges * * *." This has been construed by numerous cases to mean that the State through its Legislature has control and authority over all public roads of the State; and that the Legislature may, in its discretion, delegate this power to such agencies as it sees fit. Among these are counties and cities in certain instances. Travis County v. Trogden, 88 Texas 302, 31 S. W. 358; 21 Tex. Jur. p. 627 Highways sec. 103, and authorities there cited. The Legislature is invested with the supreme power of regulation and control of the highways of the State. State v. Hale, 136 Texas 29, 146 S. W. 2d 731, 1.c. (12,13) & (14) p. 736.

The State has created a Highway Commission, and has placed under its direct and exclusive control the management of its highway system. Vernon's Ann. Civ. Stats., Arts. 6663, 6673, 6674g-4, 6674g-5, and Title 116 Chap. 1; Robbins v. Limestone County, 114 Texas 345, 268 S. W. 915, 919; State v. Hale, supra.

Art. 5159a, Vernon's Ann. Civ. Stats., was passed in 1933 by the 43rd Legislature. It is quite lengthy and we will not set out the Act in full. A reading of the Act shows that it has for its purpose the payment of *not less* than the prevailing wage rate that is being paid in the locality where the work is being performed to workmen on all public works. It so declares many times by its provisions. The Act requires the "public body awarding any contract for public works" to

ascertain such "prevailing rate of per diem wages" and to specify in the call for bids and in the contract itself such rate. The Act further makes it obligatory upon all contractors and subcontractors on any public works to pay *not less* than such rate, and provides a penalty of $10 per day per laborer, etc. for each day or portion thereof such laborer, etc. is underpaid. The public body awarding the contract, its agents and officers must take cognizance of the complaints of all violations of the Act committed during the contract. The Act also provides for the "awarding body" to withhold the penalty from final payment to the contractor, if after a full investigation the charges of underpayment are sustained. Under certain circumstances the contractor is permitted to withhold payment to any subcontractor who has violated the Act.

Sec. 3 of the Act requires all contractors and subcontractors to keep accurate records of the names and occupations and rate of pay of all laborers employed on the contract; and requires such records to be kept open to the inspection of the "public body awarding the contract", its officers and agents.

Sec. 4 is a section defining the terms used in the Act and as material to this cause says "* * * 'The term general prevailing rate of per diem wages' shall be the rate determined upon *as such rate* by *the public body awarding the contract,* or authorizing the work, *whose decision in the matter shall be final* * * *."* (Emphasis added).

That language is plain and unambiguous and is the expression of the Legislature on the subject. Unless such language violates some constitutional right of the respondent herein, it must be given the plain meaning of its terms. No attack is made on the Act as being unconstitutional and in this case we proceed on the assumption that it is constitutional.

■ It was held by the Court of Civil Appeals and is claimed by respondent that an appeal from such determination must necessarily follow as a matter of right. The decision as to the "prevailing wage rate" provided for by this statute is an administrative function. At common law, and under the Constitution of Texas and of the United States, there is no right to a "prevailing wage rate." Such right comes into being wholly from the statute under consideration, and such right is to be governed by the terms of such statute.

The early case of Keenan v. Perry, 24 Texas 253, in dis-

cussing the right of the courts to review the action of the Governor in removing from office the Superintendent of the State Lunatic Asylum, said:

"No principle is more firmly established, than that where a special and exclusive authority, is delegated to any tribunal or officer of the government, and no mode of revising his decision, by appeal or otherwise, is provided by law, his action is final and conclusive, of the matter submitted to his decision. This principle applies to all officers and tribunals to whom, or to which, a special authority is thus delegated; and not less to the chief executive officer of the state, than to other officers and tribunals, constituted with a special and limited, but exclusive authority."

See also Williams v. Castleman, 112 Texas 193, 247 S. W. 203; Alpha Petroleum Co. v. Terrell, 122 Texas 257, 59 S. W. 2d 364; Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 131 S. W. 2d 73.

We believe the case of Perkins v. Lukens Steel Co., 310 U. S. 113, 84 L. Ed. 1108, 60 Sup. Ct. 869, is in point and the decision in that case gives the reasons for the holding that the determination of the Secretary of Labor (the person to determine the "locality" and "prevailing wage rate") is final and not subject to review by the Courts. In that case the determination by the Secretary of Labor of the prevailing wage rate for a "locality" and made under the provisions of the Public Contracts Act of 1936, was sought to be reviewed by certain manufacturers of steel who desired to bid for government contracts. The Court states the contention of the Secretary of Labor as follows:

"Here, and below, the Government has challenged the right of the Judiciary to take such action, (review determination of Secretary and grant an injunction against its use) alleging that it constitutes an unwarranted interference with deliberate legislative policy and with executive administration vital to the achievement of governmental ends * * *" 1. c. bot. p. 123.

Also, "Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases. Acting through its agents as it must of necessity, the Government may for the purpose of keeping its own house in order lay down guide-posts by which its agents are to proceed

in the procurement of supplies, and which create duties to the Government alone. It has done so in the Public Contracts Act. That Act does not depart from but instead embodies the traditional principle of leaving purchases necessary to the operation of our Government to administration by the executive branch of Government, with adequate range of discretion free from vexations and dilatory restraints at the suits of prospective or potential sellers. It was not intended to be a bestowal of litigable rights upon those desirous of selling to the Government; it is a self-imposed restraint for violation of which the Government—but not private litigants— can complain. Thus, a wage determination by the Secretary contemplates no controversy between parties and no fixing of private rights; the process of arriving at a wage determination contains no semblance of these elements which go to make up a litigable controversy as our law knows the concept. Courts have never reviewed or supervised the administration of such an executive responsibility even where executive duties 'require an interpretation of the law.' Judicial restraint of those who administer the Government's purchasing would constitute a break with settled judicial practice and a departure into fields hitherto wisely and happily apportioned by the genius of our policy to the administration of another branch of Government."

Art. 5159a has come before the appellate courts of Texas in at least two cases. In the case of Southern Prison Co. v. Rennels, Civ. App., 110 S. W. 2d 606, writ dismissed, Justice Jackson of the Amarillo Court of Civil Appeals says:

"The commissioners' court of Wilbarger county is the 'public body' authorized by law to contract for the repair of the jail, and is the 'public body' directed by the Legislature to determine and specify the general prevailing rate of per diem wages and the 'public body whose decision in the matter shall be final.' The primary objects of the statute, doubtless, are to inform the bidder the wage rate to be paid his employees and especially to protect workmen, laborers, and mechanics from being required, if they accept employment, to work for less than the prevailing wages paid in the county for the same class and character of work. The statute, we think evidences the intention of the Legislature to confer upon the commissioners' court *exclusive jurisdiction* to determine and specify the general and prevailing rate of per diem wages that shall be paid on public improvements for the county. This intention is, we think, emphasized by Article 1581a, Vernon's Ann. Pen. Code, making it a misdemeanor for any officer, agent, or representative of the state or any political subdivision thereof to

unlawfully violate or omit to comply with any of the provisions for maintaining the prevailing wage rate." (Emphasis added).

In that case Rennels, who had worked for Southern Prison Company in repairing the Wilbarger County jail under a contract awarded by the Commissioners' Court of Wilbarger County, had sued the Prison Company in justice court for the difference in what he had been paid as a laborer on the job and $1 per hour which Rennels claimed was the prevailing wage rate for the kind and character of work he did. Rennels recovered judgment in the justice court and in the county court on appeal. The amount of the judgment was less than $100 so judgment of the county court was final. The steel company then brought suit in the district court of Wilbarger County seeking an injunction against Rennels, the sheriff and the constable, to prevent them from enforcing or attempting to enforce the said judgment on the ground it was void. The trial court refused the injunction, but on appeal the Amarillo Court held the judgment in the justice court and the county court to be void, because the Commissioners' Court had not fixed any rate of pay as the "prevailing wage rate", and the injunction was granted. The Court said:

"Since the power and duty of determining the prevailing per diem wage rate for the work on this contract was vested in the commissioners' court, it was not authorized to ignore such power and duty at its discretion. City of Uvalde et al. v. Uvalde Electric & Ice Co. (Tex. Com. App.) 250 S. W. 140.

"The commissioners' courts determine the county tax rate, within constitutional limitations, on property in their counties and an order of said court fixing the compensation of a county treasurer on a commission basis was approved by the Supreme Court in Shaw et al. v. Smith County (Tex. Com. App.) 29 S. W. 2d 1000.

"Courts may not exercise the rate-making power or usurp the functions of a commission or public body to which such power has been delegated. Railroad Commission of Texas v. Uvalde Const. Co. et al. (Tex. Civ. App.) 49 S. W. 2d 1113; Texas Gas Utilities Co. et al. v. City of Uvalde et al. (Tex. Civ. App.) 77 S. W. 2d 750; 34 Tex. Jur. p. 727, par. 23."

In the case of Austin Bridge Co. v. Teague (Civ. App.) 149 S. W. 2d 674 (reversed by Sup. Ct., 137 Texas 119, 152 S. W. 2d 1091 on the ground that the determination of the controversy by the State Highway Engineer adversely to Teague prevented any further action in the Courts) the Court

discusses Art. 5159a, and with regard to the determination of the "prevailing wage rate" says:

"It is also manifest that the quoted provisions of Art. 5159a, providing for the ascertaining and fixing of the general prevailing rate of wages, and that the Commission's decision therein 'shall be final,' relate to the preliminary duty of the Commission before 'undertaking any public work.' Obviously, this finding or fixing of the minimum rate of wages must be final because the statute provides that the rate of wages so ascertained and fixed by the Commission 'shall (be) specif(ied) in the call for bids for (the) contract, and in the contract itself.' If the rate of wages so fixed was not made final the contractor would be unable to make estimates of the cost of the work, and his contract would be indefinite and hazardous. * * *"

There is good reason for making the decision of the Highway Commission final. In 1932 a three judge Federal District Court for the Western District of Texas, had held there could be no criminal prosecution under the then existing Penal Code Art. 1580 and 1581 because of the uncertainty and indefiniteness of the provision that "not less than the current rate of per hour wages for like work in the locality where the work is being performed shall be paid to the laborers, workmen, mechanics, or other persons so employed or on behalf of the State", etc., etc. Gragg, the Texas Commissioner of Labor and the County Attorney of Travis County, Texas, were threatening to prosecute Christy-Dolph (contractors on building for the University of Texas) for paying less than the amount which had been determined by Gragg to be the "current rate of per hour wages", etc., etc. In granting the injunction against the prosecution of the contractors, the Court in Christy-Dolph v. Gragg, 59 F. 2d 764 said:

"It is not possible to fairly distinguish this decision in the Connally Case (Connally v. General Construction Co., 269 U. S. 385, 46 Sup. Ct. 126, 128, 70 L. Ed. 322) from the matters at issue in the case at bar. It is perfectly obvious from the findings of fact which have heretofore been made that the wages paid for labor such as that involved here, even adopting the city of Austin as the locality intended, varied to a great extent. The term 'current rate of wages,' as used in the statute, and as the same must be applied to the plaintiffs in this particular case, furnishes absolutely no definite criterion by which the parties concerned can be guided in determining whether they are or are not complying with the law. Furthermore, it is equal-

ly obvious that the term 'locality where the work is being performed', as used in the statute, fixes no definite area of which all parties may be apprized, nor does the evidence here aid the matter any, as the testimony leaves the question of the locality as vague and indefinite as the statute itself."

The Commissioner of Labor and the County Attorney contended that the determination of the Commissioner as to the wage rate was final and made the rate definite and certain and the statute not subject to the attack made by the contractors, Christy-Dolph. The Court disposes of that contention as follows:

"It is contended that the effect of these statutes is to give the commissioner power to hold a hearing such as was held in this case and determine the current wage rate in the locality. We think it perfectly obvious that the statutes neither accomplished, nor attempted to accomplish, any such result. On the contrary, they were intended to relate to the supervision of sanitary and health conditions in the places designated. However, were they accorded the full significance contended for, the error lurking in the proposition is not far to seek. *There is nothing in articles 1580 and 1581 of the Penal Code which says that the 'current rate of per hour wages for like work in the locality' shall be the rate promulgated by the commissioner after such hearing.* The employer would be in no way protected under the statutes by following the judgment of the commissioner as to what constituted the proper rate. He would be just as safe in following his own opinion, as in the last analysis, under the statutes attacked, the question as to what is the current rate in the locality would have to be determined by a court or jury in each case as it came up. His only protection in following the decision of the commissioner would lie in the fact that the commissioner himself might not elect to institute the prosecution. The rights of the parties cannot be permitted to hang on such an arbitrary and slender thread as this." (Emphasis added).

Following the decision of that case the Legislature at its next session (in 1933) passed House Bill No. 54 now carried as Art. 5159a, Vernon's Civil Statutes, Ann., and therein provided that the determination of the Highway Commission as to "prevailing wage rate" should be final. As the Bill came to the Senate it contained a provision that in case any dispute should arise "as to what are prevailing rates of wages * * * which dispute cannot be adjusted by the contracting parties, the matter shall be referred to the Commissioner of Labor for determinination and his decision shall be conclusive on all parties."

This provision was deleted from the bill before final passage and the present provision substituted so the Act now reads: "The term 'general prevailing rate of per diem wages' shall be the rate determined upon as such rate *by the public body awarding the contract,* or authorizing the work, *whose decision in the matter shall be final."* (Emphasis added).

■ We fail to see how more clear language showing the intention of the Legislature could have been used.

As was aptly said by that great Chief Justice Nelson Phillips in Simmons v. Arnim, 110 Texas 309, 220 S. W. 66, 1. c. 2nd col., page 70:

"Whatever may be the reason for or against such a requirement, it is a matter for the Legislature and not the courts. Under no fair and warrantable construction of the present statutes as they are written, is it, in our opinion, now in force.

"(8) Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find an intent in its language, and not elsewhere. They are not the law-making body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain."

The trial court in refusing the temporary injunction after a hearing found against Respondent in its allegations as to arbitrary and unlawful actions on the part of the Highway Commission.

Our holding that the action of the Highway Commission in determining and ascertaining the "general prevailing rate of per diem wages" is final and not subject to review by the Courts in this proceeding, makes unnecessary any discussion of the other points of error assigned by Petitioners, and finally disposes of this cause.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court refusing the injunction is affirmed.

Opinion delivered November 29, 1950.

Rehearing overruled January 3, 1951.