

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

11 Texas, Suite 700
Juston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

May 9, 1984

Mr. Ron Jackson
Executive Director
Texas Youth Council
P. O. Box 9999
Austin, Texas    78766

Opinion No. JM-155

Re:  Whether the Professional
Services Procurement Act pre-
cludes an inquiry into archi-
tectural or engineering fees

Dear Mr. Jackson:

You inform us that the Texas Youth Commission has developed a questionnaire which you intend to submit to architects and engineers being considered for employment by your agency. The questionnaire elicits information regarding professional fees which engineers or architects would find appropriate for the project being considered. You ask us two questions. First, you ask

> [s]hould the Professional Services Procurement Act be interpreted to prohibit the inclusion of the following question in the proposed Texas Youth Commission Architect/Engineer Questionnaire:
>
> Question A 2.12:  There are maximum ceilings for professional services fees this agency can pay. What would you consider to be a fair and reasonable fee providing complete architectural and engineering services (programming through construction observation to include one-year follow-up inspection) for this project?

With your second question, you ask:

> If the answer to [the first question] is affirmative, what means are appropriate for making such information available for consideration in selection of an architect or engineer?

We conclude, first, that article 664-4, V.T.C.S. (Professional Services Procurement Act) [hereinafter "the Act"], does not prohibit the inclusion of a question designed to elicit information regarding fair and reasonable fees or cost estimates. Because we answer your

first question in the negative, we need not answer your second question.

Article 664-4, V.T.C.S., provides the following:

Section 1.  This Act shall be known and may be cited as the "Professional Services Procurement Act."

Sec. 2.  For purposes of this Act the term "professional services" shall mean those within the scope of the practice of accounting, architecture, optometry, medicine or professional engineering as defined by the laws of the State of Texas or those performed by any licensed architect, optometrist, physician, surgeon, certified public accountant or professional engineer in connection with his professional employment or practice.

Sec. 3.  No state agency, political sub-division, county, municipality, district, authority or publicly-owned utility of the State of Texas shall make any contract for, or engage the professional services of, any licensed physician, optometrist, surgeon, architect, certified public accountant or registered engineer, or any group or association thereof, selected on the basis of competitive bids submitted for such contract or for such services to be performed, but shall select and award such contracts and engage such services on the basis of demonstrated competence and qualifications for the type of professional services to be performed and at fair and reasonable prices, as long as professional fees are consistent with and not higher than the published recommended practices and fees of the various applicable professional associations and do not exceed the maximum provided by any state law.

Sec. 4.  Any and all such contracts, agreements or arrangements for professional services negotiated, made or entered into, directly or indirectly, by any agency or department of the State of Texas, county, municipality, political subdivision, district, authority or publicly-owned utility in any way in violation of the provisions of this Act or any part thereof are hereby

> declared to be void as contrary to the public policy of this State and shall not be given effect or enforced by any Court of this State or by any of its public officers or employees. (Emphasis added).

We are required to interpret a statute in a way

> which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

Railroad Commission of Texas v. Miller, 434 S.W.2d 670, 672 (Tex. 1968), quoting Texas Highway Commission v. El Paso Building and Construction Trades Council, 234 S.W.2d 857 (Tex. 1950).

The clear terms of the Act itself do not merely permit the consideration by the agency of the fees charged for certain professional services, but require it. While the Act expressly prohibits the awarding of contracts for certain professional services on the basis of competitive bids, it clearly requires an agency to award such contracts "on the basis of demonstrated competence and qualifications for the type of professional services to be performed and at fair and reasonable prices." V.T.C.S. art. 664-4, §3 (emphasis added). Section 3 goes on to require that such professional fees be "consistent with and not higher than the published recommended practices and fees of the various applicable professional associations and do not exceed the maximum provided by any state law." Therefore, the imposition of fees must be one factor considered by any agency in awarding a contract for such professional services; however, it cannot be the only factor to be considered. Section 8 of Acts 1971, 62nd Legislature, chapter 38, page 73, the emergency provision of the Act, contains the following language detailing the public policy considerations prompting the passage of the Act:

> The fact that the selection of certified public accountants, architects, physicians, optometrists, surgeons and professional engineers on the basis of the lowest bid places a premium on incompetence and is the most likely procedure for selecting the least able or qualified and the most incompetent practitioner for the performance of services vitally affecting the health, welfare and safety of the public and that, in spite of repeated expressions of the legislature excepting such professional services from statutes providing for competitive bidding procedures, some public officers continue to apply competitive bidding

procedures to the selection of such professional personnel, creates an emergency of the greatest public importance to the health, safety and welfare of the people of Texas . . . . (Emphasis added).

Accordingly, we answer your first question in the negative. As a result, we need not answer your second question.

### S U M M A R Y

Article 664-4, V.T.C.S., (the Professional Services Procurement Act), does not prohibit the inclusion on a questionnaire submitted to engineers or architects being considered for employment of any question designed to elicit information regarding professional fees which such engineers or architects would find appropriate for the project being considered.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jim Moellinger
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
David Brooks
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton
Bruce Youngblood