

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

March 12, 1998

The Honorable René O. Oliveira
Chair, Committee on Economic Development
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-469

Re: Whether Government Code section 2258.021 requires Midwestern State University to pay the prevailing wage rate to electricians performing work on Bolin Science Hall, and related questions (RQ-957)

Dear Representative Oliveira:

Under Government Code section 2258.021, a worker employed to work on the construction or repair of a public work is entitled to receive no less than the local, prevailing wage rate for work of a similar character. You assume that the Bolin Science Hall Project on the Midwestern State University Campus is subject to Government Code chapter 2258, and, as we understand it, you ask generally whether an electrician working on the project is entitled to receive a wage equal to or greater than the local prevailing wage. In reliance on your assumption,[1] we conclude that, unless the work is limited to maintenance, an electrician working on the project is so entitled.

You also ask five more specific questions about Government Code chapter 2258. First, you ask whether a contractor violates that chapter by paying one worker two different rates of pay. We conclude it is not a violation as a matter of law, although it may be a violation as a matter of fact. Second, you ask whether it is a violation of chapter 2258 to employ a craft or type of worker not listed in the original public-work contract. We conclude that a contractor may hire a craft or type of worker not listed in the contract's wage determination so long as the public entity approves, in advance, the hiring and determines the prevailing wage rate to which the worker is entitled. Third, you ask whether the sixty-dollar penalty section 2258.023(b) levies on a contractor who fails to pay

---

[1] In its brief, A-Bar Electric generally admits the contract is subject to Government Code chapter 2258, although it suggests V.T.C.S. article 5159a might apply:

> There is no question that Chapter 2258 applies to work at Midwestern State University if bid after September 1, 1995. The question remains whether art[.] 5159a might take precedence over Chapter 2258 because it was specified in the contract documents. The public body lacks legislative ability to rewrite law, therefore it appears that Chapter 2258 would in fact apply to the Bolin project bid March 20, 1996.

We note that the legislature repealed V.T.C.S. article 5159a in 1995. See Act of Apr. 25, 1995, 74th Leg., R.S., ch. 76, § 5.49(b), 1995 Tex. Gen. Laws 458, 505. The substance of that article is codified at Government Code chapter 2258; any changes made as a result of the codification are nonsubstantive. See id. §§ 1.01, 5.49(a), 1995 Tex. Gen. Laws 458, 458, 502-05.

the prevailing wage rate is mandatory or optional. We conclude payment of the penalty is mandatory. Fourth, you ask whether the sixty-dollar penalty is required even though the worker has agreed to accept wages below the prevailing wage. We conclude that it is. Fifth and finally, you ask how a worker misclassified as an apprentice, and who therefore received a reduced wage, may collect the difference between the wages the worker should have received and the wages he or she actually received. Assuming Midwestern State University has determined that the contractor here has not violated chapter 2258, we believe the worker and the contractor must arbitrate the issue.

We understand that you raise these issues because the International Brotherhood of Electrical Workers alleges that A-Bar Electric, Inc., which we understand to be a subcontractor on the remodeling of the Bolin Science Hall, is paying less than the local, prevailing wage rate to its electricians. As we understand it, the IBEW alleges in part that at least one worker employed by A-Bar Electric was classified in four different crafts or types of work, receiving a differing wage rate for each craft or type. Additionally, it is alleged that workers were classified in some crafts or types of work that Midwestern State University had not listed in the contract.[2] Moreover, materials you sent with your request contend that A-Bar Electric has, in several instances, misclassified journeyman electricians as apprentices, thereby reducing the wages paid those electricians below the prevailing wage level for journeymen.[3] We understand that Midwestern State University and A-Bar Electric contest these allegations. This office is not a fact-finding body,[4] and we assume for purposes of this opinion that the allegations are true.

You assume in your letter to this office that the Bolin Science Hall project is subject to Government Code chapter 2258, and we accept your assumption without examining it. In any event, we must rely on your assessment because we have not received a description of the project beyond an indication that it is a remodeling project. Accordingly, we will discuss next the pertinent provisions of chapter 2258.

Government Code section 2258.021[5] entitles a worker employed on a public work to wages equal to or greater than the prevailing wage rate in the locality in which the work is being performed:

> **RIGHT TO BE PAID PREVAILING WAGE RATES.** (a) A worker employed on a public work by or on behalf of the state or a political subdivision of the state shall be paid:

---

[2]Counsel for Midwestern State University has stated in a brief that certain individuals were employed on the Bolin Science Hall Project as cable pullers or wire pullers and apprentice wire pullers. These classifications were not, counsel states, listed in the university's prevailing wage rate determinations for the contract.

[3]See Letter from Harold White, Esq., Banner, Briley & White, L.L.P., to Al Hooten, Vice-President, Financial Affairs, Midwestern State University (Mar. 17, 1997) (on file with Attorney General Opinion Comm.).

[4]See, e.g., Attorney General Opinions DM-98 (1992) at 3, H-56 (1973) at 3, M-187 (1968) at 3, O-2911 (1940) at 2.

[5]Government Code section 2258.021 was amended by Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 18.01, 1997 Tex. Sess. Law Serv. 327, 486. We quote the amended statute.

(1) not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the work is performed;[6]

. . . .

(b) Subsection (a) does not apply to maintenance work.

(c) A worker is employed on a public work for the purposes of this section if the worker is employed by a contractor or subcontractor in the execution of a contract for the public work with the state, a political subdivision of the state, or any officer or public body of the state or a political subdivision of the state.[7]

The worker's prevailing wage entitlement inheres in any contract for "the construction of a public work, including a building, . . . and repair work or other project development or improvement, paid for in whole or in part from public funds," regardless of whether the contracting public body supervises or directs the work.[8] The public body must specify in the call for bids and the contract the prevailing wage rate for each craft or type of worker necessary to execute the contract.[9]

Similarly, a contractor[10] who is hired to perform the work "*shall*" pay workers employed in the execution of the contract no less than the prevailing wage rate specified in the contract.[11] A contractor who violates the prevailing wage rate requirement must pay a penalty:

A contractor . . . who violates this section shall pay to the state or a political subdivision of the state on whose behalf the contract is made, $60

---

[6] The "locality in which the work is performed" is, for a contract awarded by the state, the political subdivision in which the public work is located, e.g., a county, municipality, county and municipality, or district; or, for a contract awarded by a political subdivision of the state, the subdivision's geographic limits. Gov't Code § 2258.001(1).

[7] [Footnote added.]

[8] *Id.* § 2258.002(a).

[9] *Id.* § 2258.022(a), (c); *cf.* 1 T.A.C. § 123.31(a) (requiring each contract for project administered by General Services Commission to include schedule of wages). Government Code section 2258.022(a), (b) establishes the method a public body must use to determine prevailing wage rates for each craft of type of worker needed to complete the project. *Cf.* 1 T.A.C. §§ 123.32, .33 (establishing procedures General Services Commission uses to determine prevailing wage rate). The public body's determination of the prevailing wage rate is final. Gov't Code § 2258.022(d) (added by Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 18.02, 1997 Tex. Sess. Law Serv. 327, 486).

[10] We use the term "contractor" to include subcontractors. *See* Gov't Code § 2258.023.

[11] *Id.* § 2258.023(a) (emphasis added). A contractor may pay a worker employed on a public work more than the prevailing wage. *See id.* § 2258.025.

for each worker employed for each calendar day or part of the day that the worker is paid less than the wage rates stipulated in the contract.[12]

Chapter 2258 also provides a procedure whereby an aggrieved worker may assert that a contractor is paying less than the prevailing wage rate specified in the contract, and we will discuss that procedure in detail in connection with your last specific question.

With this summary of chapter 2258, we turn to the issues you raise. We conclude, in answer to your general question, that a contractor hired to work on the Bolin Science Hall project must pay no less than the prevailing wage rate to electricians working on the project unless the work is limited to maintenance. Government Code section 2258.021(a) entitles a worker employed on a public-work project on behalf of the state or a political subdivision to no less than the prevailing wage rate. Additionally, section 2258.023(a) requires the contractor on a public-work project to pay workers on the project no less than the prevailing wage rate. Maintenance is, however, excepted from the prevailing wage rate requirement.[13] As this office previously has said, "maintenance" refers to ordinary upkeep and repairs necessary to preserve something in good condition.[14] Whether the Bolin Science Hall project is maintenance is a question of fact that is not amenable to the opinion process.[15] If the project is a remodeling project, as the union has alleged and as the term "remodeling" is commonly understood, we surmise the project involves more than maintenance.[16]

In answer to your first specific question, we conclude that a contractor does not violate chapter 2258 as a matter of law by paying a single worker two different wage rates. In our opinion, the prevailing wage rate attaches to the job performed. If an individual performs different jobs, he or she is entitled to be compensated at the prevailing wage rate for each job. So, for example, if one worker works on Monday as a stonemason and on Tuesday as a carpenter, he or she is entitled to receive *stonemason's* wages for Monday and *carpenter's* wages for Tuesday.

From the exemplary situations the union has detailed,[17] we gather that, among other things, the union is concerned that individual workers have been classed as journeymen for some of the work they performed and as apprentices for other work. We do not believe chapter 2258 is violated

---

[12]*Id.* § 2258.023(b); *see also id.* § 2258.022(c) (requiring public body to specify prevailing wage rates in contract). Penalty monies a public body collects do not go to the underpaid workers. Rather, the public body must use the monies to offset costs incurred in administering chapter 2258. *See id.* § 2258.023(d).

[13]*See id.* § 2258.021(b).

[14]*See* Attorney General Opinion O-1216 (1939) at 2-3 (and sources cited therein).

[15]*See, e.g.,* Attorney General Opinions DM-98 (1992) at 3, H-56 (1973) at 3, M-187 (1968) at 3, O-2911 (1940) at 2.

[16]*See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 996 (defining verb "remodel" as structurally alter; remake) (1990).

[17]*See supra* text accompanying note 3.

if an individual worker who is a journeyman in one craft and an apprentice in another is paid accordingly; for instance, in the example we just used, a worker may be a journeyman stonemason but an apprentice carpenter. Nevertheless, we assume the union is concerned that one worker, a journeyman electrician, receives journeyman's wages for some, but not all, of the electrical work the worker performs. For the remainder of the electrical work, the worker receives apprentice's wages.

Whether a worker is a journeyman or an apprentice is not a question requiring a legal interpretation of chapter 2258, which does not distinguish between the two. Rather, it may be a question of contract interpretation, a task this office is not equipped to perform.[18] It is also a question of fact.[19]

In answer to your next question, we do not construe Government Code chapter 2258 to forbid a contractor from hiring crafts or types of workers not listed in the public work contract if the public body has had the opportunity to approve the hiring and to determine the prevailing wage rate to which the new classification of worker is entitled. We note, of course, that section 2258.022 requires a public body to specify in the call for bids and the contract the general prevailing wage rate "for each craft or type of worker needed to execute the contract . . . ." But we cannot say that the legislature intended by this to restrict a public body or its contractor from hiring classifications of workers, the need for which was not originally foreseen, to respond to a situation discovered after the public-work project has started. For example, in the course of a remodeling project, parties to the contract may discover, as the plaster comes down, unexpected damage that cannot be properly repaired by any of the crafts or types of workers listed in the contract. In our view, the legislature intended by the substance of section 2258.022 to require the public body to approve in advance every classification of worker that the contractor hires and, most importantly, to set the prevailing wage

---

[18]*See* Attorney General Opinions DM-192 (1992) at 10, JM-697 (1987) at 6. We note that the document we believe to be the contract at issue here, between the board of regents of Midwestern State University and the contractor for the remodeling of Bolin Science Hall, does not define the terms "journeyman" and "apprentice," yet it contemplates that both may be used on the project. The contract expressly permits the contractor to use apprentices on the project and requires the contractor to compensate an apprentice "at a rate determined mutually by worker and employer, commensurate with the experience and skill of the worker but" at least 60% of the journeyman's wage. The contract further restricts the number of apprentices to no more than one per journeyman.

[19]*It is quite possible* that Midwestern State University and the contractor intended the term "apprentice" to include only an individual enrolled in an apprenticeship training program that is registered and approved consistent with Education Code chapter 133. Under that chapter, the state funds an apprenticeship training program that is registered with the United States Department of Labor's Bureau of Apprenticeship and approved by the Texas Employment Commission. *See* Educ. Code § 133.002(a), (c). "Electrician" and other electrical workers are among those occupations the Bureau of Apprenticeship Training "officially recognize[s]" as apprenticeable. *See* BUREAU OF APPRENTICESHIP AND TRAINING, OFFICIALLY RECOGNIZED APPRENTICEABLE OCCUPATIONS LIST 6 (1997). Indeed, one brief we have received contends that Midwestern State University adopted the General Service Commission's definition of "apprentice," which, we are told, includes only individuals registered in certified apprenticeship programs. *See* Letter from Richard Levy, Legal Director, Texas AFL-CIO, to Ms. Kym Oltrogge, Office of the Attorney General (Nov. 13, 1997) (on file with Attorney General Opinion Committee).

rate to which each classification of worker is entitled.[20] So long as the public body has in place a system whereby, prior to the hiring, it reviews a contractor's request to hire a craft or type of worker not specified in the contract and determines the local, prevailing minimum wage rate, we do not believe a contractor who complies with that system violates Government Code chapter 2258. A contractor may not, however, hire a craft or type of worker if the public body has not approved the hiring and determined the prevailing wage rate in advance.

We conclude, in response to your third specific question, that a contractor *must*, not *may*, pay a sixty-dollar penalty if the contractor has violated section 2258.023. Section 2258.023(b) describes the penalty as a *mandatory*, not an *optional*, punishment: "A contractor . . . who violates this section *shall* pay . . . $60 for each worker employed for each calendar day or part of the day that the worker is paid less than the wage rates stipulated in the contract." The sixty-dollar penalty section 2258.023 prescribes does not apply to violations of other sections of chapter 2258, however.[21]

Similarly, we conclude that a contractor who violates section 2258.023 must pay the sixty-dollar penalty even if the underpaid worker agreed to accept a wage rate below the listed, prevailing wage rate. Section 2258.023(a) requires the contractor to pay no less than the listed, prevailing wage rates. Moreover, chapter 2258 frames the prevailing wage rate requirement as a worker's entitlement. Section 2258.021, as amended by the legislature in 1997,[22] is titled "*Right* to be Paid Prevailing Wage Rates,"[23] and mandates that a worker employed on a public work "*shall be paid*"[24] no less than the prevailing wage rate. Chapter 2258 excuses the contractor from paying the prevailing wage rate only in two circumstances: first, if the work is limited to maintenance;[25] or second, if the public body failed to list in the contract the prevailing wage rates.[26]

---

[20]*See infra* text accompanying notes 27, 28 (*discussing chapter 2258's primary purpose*).

[21]*See* Gov't Code § 2258.023(b).

[22]*See* Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 18.01, 1997 Tex. Sess. Law Serv. 327, 486.

[23][Emphasis added.]

[24][Emphasis added.]

[25]*See* Gov't Code § 2258.021(b).

[26]*See id.* § 2258.023(c). Interestingly, we note that in 1993 the legislature considered amending chapter 2258 to explicitly prohibit a contractor from claiming as a defense that the worker had voluntarily agreed to accept a wage lower than the prevailing rate. *See* House Bill 560, 73d Leg., R.S., sec. 1, § 2(e) (1993). As introduced, House Bill 560 proposed adding a sentence to what is now essentially section 2258.056(c): "It is not a defense in [a legal action brought by a worker to recover proper wages] that the laborer, workman, or mechanic voluntarily accepted or agreed to accept payment at a rate less than the general prevailing rate of per diem wages for that public works project or voluntarily refunded to the contractor or subcontractor part of the wages paid." That proposed amendment was deleted on the House floor, however, and the legislative history reveals no specific reason for the deletion. *See* Debate on H.B. 560 on the Floor of the House, 73d Leg., R.S. (May 10, 1993) (amendment by Representative Chisum) (tape available from Senate Staff Services); *see also* H.J. of Tex., 73d Leg., R.S. 2324-25 (1993). This rejection of the proposed amendment is not probative simply because we may attach differing interpretations to it. It may, for example, indicate that the

(continued...)

Our conclusion is entirely consistent with the primary purpose of chapter 2258 and its statutory predecessor, which is "to protect workmen, laborers, and mechanics from being required, if they accept employment, to work for less than the" local prevailing wage.[27] The emergency clause to the enactment adopting chapter 2258's statutory predecessor cited a need to protect workers from unscrupulous contractors:

> The fact that there is no adequate law protecting laborers, workmen and mechanics engaged in doing and performing work on public works in Texas and its political subdivisions, and the further fact that many contractors are taking advantage of the present industrial and economic condition to beat down wages to a level far below that required to maintain a laborer, workman or mechanic in reasonable circumstances, and the further fact that this condition has created a social problem demanding the immediate attention of the [legislature], create an emergency . . . .[28]

Finally, in response to your last question, we conclude that a worker who believes he or she has been underpaid, but whom the public body has determined was not underpaid under chapter 2258, must submit the issue to binding arbitration unless the worker and the contractor can settle the issue. Chapter 2258 sets up a somewhat confusing enforcement mechanism, though, and we feel it merits explanation. To initiate enforcement, an aggrieved worker must file a complaint with the public body that awarded the contract.[29] The public body must make an "initial determination" as to whether it has good cause to believe that the contractor has in fact violated chapter 2258.[30] If the public body makes an initial determination that the contractor is underpaying the aggrieved worker,

---

[26](...continued)
legislature did not intend the bill to include the rejected provision. See 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 48.18 (5th ed. 1992). On the other hand, it may indicate that the legislature felt the amendment was redundant of something already in the statute. See id. It may also suggest that the amendment suffered from a procedural irregularity.

[27]See Southern Prison Co. v. Rennels, 110 S.W.2d 606, 609 (Tex. Civ. App.–Amarillo 1937, writ dism'd); Texas Highway Comm'n v. El Paso Bldg. & Constr. Co., 234 S.W.2d 857, 860-61 (Tex. 1941) (quoting with approval Southern Prison Co., 110 S.W.2d at 608-09); Sharifi v. Young Bros., Inc., 835 S.W.2d 221, 222 (Tex. App.–Waco 1992, writ denied); Cullipher v. Weatherby-Godbe Constr. Co., 570 S.W.2d 161, 164 (Tex. Civ. App.–Texarkana 1978, writ ref'd n.r.e.); Attorney General Opinions JM-463 (1986) at 4-5, JM-329 (1985) at 2-3. Chapter 2258 serves a secondary purpose: to notify bidders and contractors on public works projects that they are required to pay workers what the public body has determined is the prevailing wage rate in the area. See Southern Prison Co., 110 S.W.2d at 609. To construe chapter 2258 to permit a contractor to avoid the prevailing wage requirements by "asking" an employee to work for less than the prevailing wage rate would abrogate the need for such notification.

[28]See Act of Mar. 21, 1933, 43d Leg., R.S., ch. 45, § 7, 1933 Tex. Gen. Laws 91, 93-94.

[29]See Gov't Code §§ 2258.051, .052.

[30]See id.§ 2258.052(a), (b).

it must withhold payments due the contractor, and it may use that money to reimburse the worker.[31] If the public body has not withheld enough from the contractor to fully reimburse the worker, the worker may sue the contractor and the contractor's surety for the remaining money he or she is owed.[32] In addition, section 2258.053(a) provides that a contractor and aggrieved worker must submit to an arbitrator any unresolved issues relating to an alleged underpayment unless the worker and the contractor settle the issue in a timely manner.[33]

In our opinion, chapter 2258 permits a worker to seek a judicial remedy only in one circumstance: where the public body, having received the worker's complaint and adjudging the allegations substantiated, withholds an insufficient amount of money to make the underpaid worker whole. In any other situation, we believe, an aggrieved worker and the contractor must try to settle or submit to binding arbitration. We believe this construction is consistent with the legislative history of the arbitration provision, which was added in 1993.[34] The arbitration provision was not in the 1993 bill as it was introduced. Rather, the bill as introduced provided that a contractor or worker "who is aggrieved by a" public body's decision on a complaint "is entitled to judicial review by trial de novo in a court of competent jurisdiction." The Senate Committee on Intergovernmental Relations deleted the trial de novo provision but provided that unresolved issues should be submitted to binding arbitration.[35] Senator Barrientos, explaining the Senate committee substitute, indicated that under the substitute "[t]he only matter that can be appealed to the court is if the city has not retained enough money from the payments to the contractor to satisfy the award of the arbitrator."[36]

We cannot advise you as to what remedies are available to the allegedly aggrieved workers in this case. We are uncertain as to whether workers have timely filed complaints with Midwestern State University, whether the university has made determinations on any complaints, whether the university has withheld any money from A-Bar Electric, or whether the allegedly aggrieved workers and A-Bar Electric have attempted to settle their differences.

---

[31]See id. §§ 2258.052(d), .056(a).

[32]See id. § 2258.056(a), (b).

[33]See id. §§ 2258.023(a), .053(a). The worker and the contractor must settle an unresolved issue within 15 days of the public body's initial determination or submit the issue to binding arbitration. See id. § 2258.053(a).

[34]See Act of May 29, 1993, 73d Leg., R.S., ch. 606, sec. 1, § 2(d), (e), 1993 Tex. Gen. Laws 2300, 2300-01.

[35]See Senate Comm. on Intergovernmental Relations, Bill Analysis, C.S.H.B. 560, 73d Leg., R.S. (1993).

[36]Hearings on H.B. 560 Before the Senate Comm. on Intergovernmental Relations, 73d Leg., R.S. (May 19, 1993) (statement of Senator Barrientos) (tape available from Senate Staff Services).

## S U M M A R Y

Assuming that the Bolin Science Hall remodeling project is subject to Government Code chapter 2258, Midwestern State University must require the contractor and subcontractors to pay no less than the local, prevailing wage rate to electricians working on the project unless the work is limited to maintenance.

Government Code chapter 2258 does not as a matter of law prohibit a contractor from paying one worker two different wage rates.

So long as a public body has in place a system whereby, prior to the hiring, it reviews a contractor's request to hire a craft or type of worker not specified in the contract and determines the local, prevailing wage rate, we do not believe a contractor who complies with that system violates Government Code chapter 2258. A contractor may not, however, hire a craft or type of worker that the public body has not approved and determined the prevailing wage rate in advance.

A contractor who pays workers less than the prevailing wage rate set out in the contract *must*, not *may*, pay a sixty-dollar penalty to the public body. It is not a defense that the underpaid worker agreed to accept a wage rate below the listed, prevailing wage rate.

Chapter 2258 permits a worker to seek a judicial remedy only in one circumstance: where the public body, having received the worker's complaint and adjudging the allegations substantiated, withholds an insufficient amount of money to make the underpaid worker whole. In any other situation, chapter 2258 requires an aggrieved worker and the contractor to try to settle the issue or submit to binding arbitration.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General