Erik LEONARD, Appellant,

v.

John CORNYN, Attorney General of Texas; City of Houston; Harris County; and Harris County–Houston Sports Authority, Appellees.

No. 03–99–00110–CV.

Court of Appeals of Texas, Austin.

Oct. 7, 1999.

Erik Leonard, Houston, for Appellant.

Elizabeth L. Pool, Houston for City of Houston.

John Cornyn, Atty. Gen., pro se.

Terence L. Thompson, Asst. Atty. Gen., Austin, for John Cornyn, Attorney General.

Frank E. Sanders, Asst. County Atty., Houston, for Harris County.

S. Shawn Stephens, Solar & Fernandes, L.L.P., Houston, for Harris County-Houston Sports Authority.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and POWERS *

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

JOHN E. POWERS, Senior Justice (Retired).

Erik Leonard appeals from a trial-court judgment dismissing for want of subject-matter jurisdiction his action for declaratory relief against John Cornyn, in his official capacity as Attorney General of Texas, the City of Houston, Harris County, and the Harris County–Houston Sports Authority (the "Authority").[1] We will affirm the judgment of dismissal.

## THE CONTROVERSY

In a November 1996 election, the voters of Harris County and the City of Houston approved resolutions authorizing the governing bodies of each to exercise powers given to such bodies in Chapter 332 of the Local Government Code. These powers pertain to the financing, establishing, and operating of recreational facilities and parks. The governmental subdivisions are authorized to act through a joint board with other such subdivisions and the board may issue bonds for the purposes indicated. *See* Tex. Loc. Gov't Code Ann. §§ 332.002–.005, .021 (West 1999).

Following the election, the City of Houston and Harris County established the Harris County–Houston Sports Authority, a joint board. Shortly thereafter, the legislature enacted Chapter 334 of the Local Government Code. Chapter 334 authorizes municipalities and counties of a specified population classification to issue and sell bonds to finance the construction of arenas, coliseums, and stadiums for professional sports teams under conditions and procedures set out in the chapter.

The bonds may only be secured by and redeemed from revenue derived from taxes specified in the chapter; among these are short-term rental-car and hotel-occupancy taxes. Before the bonds may issue, chapter 334 requires that the bonds and the proceedings authorizing them be submitted to the Attorney General for his examination and approval as prescribed in article 717k–8 of the Texas Revised Civil Statutes. *See id.* § 334.043(b) (West 1999); *see generally* David B. Brooks, 35 *Texas Practice: County and Special District Law* §§ 17.16, .17 at 584–85 (West 1989).

While chapter 334 ordinarily requires approval by the electorate of bonds proposed to be issued under the chapter, that requirement does not apply

> if, at an election held before the effective date of this Act, the voters of that county, or of the county in which the municipality . . . is primarily located, authorized the establishment and operation of new or renovated stadiums, arenas, or other facilities for professional sports teams.

Act of June 2, 1997, 75th Leg., R.S., ch. 551, § 7, 1997 Tex. Gen. Laws 1929, 1953. Whether this "grandfather" provision, properly interpreted, applies to the November 1996 election is the origin of Leonard's dispute with the Attorney General, Harris County, City of Houston, and the Authority.

Chapter 334 was effective September 1, 1997. On October 1, 1997, the Authority began collecting a short-term rental-car

---

1. Attorney General John Cornyn was substituted for his predecessor in office, Dan Morales, whom Leonard had sued originally in district court in his official capacity. In a pleading titled "Motion to Drop Parties" filed with his first amended original petition, Leonard alleged that the City of Houston, Harris County, and the Authority "no longer have or can claim any interest that would be affected by the declaratory relief sought" by Leonard. Our appellate record does not indicate the motion was ever brought to the trial judge's attention nor that it was ever acted upon. Leonard identifies the City of Houston, Harris County, and the Authority as appellees and each has filed a brief in this Court.

tax and hotel-occupancy tax to secure and redeem Authority bonds to be issued after the Attorney General's examination and approval, and after registration of the bonds and the record of proceedings with the Comptroller of Public Accounts, in compliance with article 717k–8. Article 717k–8 provides as follows:

\* \* \* \* \*

Sec. 3.002. (a) Notwithstanding any other law, ... before the issuance of bonds by an issuer, the bonds and the record of proceedings of the issuer relating to authorization of the bonds shall be submitted to the attorney general for approval.

(b) If the attorney general finds that the bonds have been authorized to be issued in accordance with law, the attorney general shall approve the bonds and deliver to the comptroller a copy of the legal opinion of the attorney general stating that approval and the record of proceedings relating to the authorization of the bonds.

(c) On receipt of the legal opinion of the attorney general and the record of proceedings relating to the authorization of the bonds, the comptroller shall register the bonds and the record of proceedings relating to the authorization of the bonds.

(d) After approval by the attorney general and registration by the comptroller and on issuance, the bonds are valid, enforceable, and incontestable in any court or other forum for any reason and are binding obligations according to their terms for all purposes.

\* \* \* \* \* \*

Sec. 3.004. The issuance of bonds by or on behalf of an issuer without complying with this article is prohibited.

\* \* \* \* \* \*

Tex.Rev.Civ. Stat. Ann. art. 717k–8 (West Supp.1999).

The Attorney General received the "bond package" on August 17, 1998; Leonard filed the present lawsuit in district court on August 31, 1998, requesting declaratory relief—to the effect that the bonds were invalid—and issuance of a writ of mandamus directing the Attorney General not to approve the bonds. While the cause was pending in district court, the Attorney General approved the bonds, and they were registered with the Comptroller and issued in September 1998. No restraining order or temporary injunction prohibited such action by the Attorney General.

In his opinion approving the bonds, the Attorney General concluded the November 1996 election came within the exception provided in section 7 of Chapter 334, and that no new election, specifically authorizing bonds for the erection of facilities for professional sports teams, was required. Alleging that the Attorney General had abused his discretion in approving the bonds based on an erroneous interpretation of the "grandfather" provision in section 7, Leonard filed on November 6, 1998, his first amended original petition, deleting his application for a writ of mandamus but continuing his action for declaratory judgment that the bonds were invalid because not preceded by an election approving them.

The Attorney General pled and moved for dismissal of Leonard's action on the ground that the trial court lacked subject-matter jurisdiction by reason of section 3.002(d) of Article 717k–8, which had been expressly incorporated in chapter 334. As indicated above, section 3.002(d) declares that bonds are valid, enforceable, and incontestable in any court after their approv-

al by the Attorney General, registration with the Comptroller, and issuance.

On March 9, 1999, the trial judge signed the following judgment from which Leonard appeals:

> On November 13, 1998, the Court considered Defendants' Motions to Transfer Venue and Pleas to the Jurisdiction. After considering the pleadings, the motion, the evidence, the response, and the briefing on file, and after hearing arguments of counsel, the Court is of the opinion that the Court does not have subject matter jurisdiction over the case. The Court further finds that, even if it did have jurisdiction, venue would be proper in Harris County.
>
> It is therefore ordered that this case is dismissed in its entirety.

## DISCUSSION AND HOLDINGS

Leonard raises on appeal nine issues. In the first four he complains that the trial court erred in granting appellees' motion to transfer venue to Harris County. We do not infer from the judgment that the trial court actually transferred venue. The contingency stated in the judgment, relative to venue, is entirely superfluous. It is evident that the trial court was powerless to rule on the motion to transfer venue if the court lacked subject-matter jurisdiction. *See* 2 *Texas Civil Practice* § 6:2 at 4–5 (Diane M. Allen et al. eds., 1992 ed.). We therefore overrule Leonard's contentions set out in issues one through four.

In issues five through nine, Leonard contends the trial court erred in sustaining the Attorney General's plea to the jurisdiction based on the provisions of article 717k–8, section 3.002(d), declaring the bonds valid, enforceable, and incontestable in any court for any reason after their approval, registration, and issuance.

Section 3.002(d) requires no italics to emphasize its unique character and the legislature's unambiguous statement of its intention to preclude judicial inquiry into the validity of municipal and county bonds after they have been approved by the Attorney General, registered with the Comptroller, and issued. The intended meaning of the statute is about as plain as words can make it.

Nevertheless, the scope of the statute cannot be extended so far as to bar absolutely a claim for relief against county or municipal actions that allegedly violate the federal or state constitutions. *See Firemen's & Policemen's Civil Service Comm'n of Fort Worth v. Kennedy,* 514 S.W.2d 237, 239 (Tex.1974); *City of Amarillo v. Hancock,* 150 Tex. 231, 239 S.W.2d 788, 790 (1951); *Texas Highway Comm'n v. El Paso Bldg. & Constr. Trades Council,* 149 Tex. 457, 234 S.W.2d 857, 863 (1950). In his five issues that pertain to the dismissal for want of jurisdiction, Leonard makes two such constitutional complaints.

■ Leonard complains first that the preclusive effect of the statute, which denies him his day in court to challenge the validity of the Attorney General's interpretation of the "grandfather" provision and his approval of the bonds on that basis, denies Leonard the equal protection of the laws guaranteed by the federal and state constitutions. *See* U.S. Const. amend. XIV; Tex. Const. art. I, § 3a. No personal-liberty interest or interest in property is affected here, and the issue reduces to whether the preclusive effect of section 3.002(d) bears a rational relationship to a legitimate state interest that the statute is designed to further. *See Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Massachusetts Indem. & Life Ins. Co. v. Texas State Bd. of Ins.,* 685 S.W.2d 104, 110 (Tex.App.—Aus-

tin 1985, no writ). For the reasons given below, we believe such an interest and relationship are obvious.

Leonard complains next that the preclusive effect of section 3.002(d) offends against the due-course-of-law and open-courts guarantees of the Texas Constitution. *See* Tex. Const. art. I, §§ 13, 19. The question here is whether the preclusive effect of the statute is unreasonable or arbitrary when balanced against its statutory purpose and basis. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex.1990). For the reasons given below, we hold the statute is neither unreasonable nor arbitrary in that regard.

In chapter 334, the legislature authorized counties and municipalities to issue bonds to pay the cost of the facilities contemplated in the chapter. *See* Tex. Loc. Gov't Code Ann. § 334.043(a). If the legislature had wished to do so, it might have excluded any requirement that the Attorney General approve the bonds. *See, e.g., Amstater v. Andreas*, 273 S.W.2d 95, 103 (Tex.Civ.App.—El Paso 1954, writ ref'd n.r.e.). Instead, the legislature expressly conditioned the authority given by requiring compliance with article 717k–8. *See* Tex. Loc. Gov't Code Ann. § 334.043(b). The requirements of article 717k–8 and their necessity have a purpose and basis derived from historical experience.

The resolutions, charter provisions, ordinances, statutes, election orders, minutes, and election results pertaining to the issuance of such bonds are matters of public record. Those who take the bonds would do so with constructive notice of any want of authority to issue them save in substantial compliance with what the law required; and the bonds would, as a practical matter, be unenforceable if not issued in compliance with law. The procedures and requirements set out in article 717k–8 are therefore designed to provide an orderly, efficient system for assuring that the bonds have been issued with the requisite authority and in compliance with what the law requires. By this means, protection is given alike to taxpayers, the counties and municipalities that issue the bonds, and those who take them. Without such a system, the questions of validity and enforceability would have to be determined through litigation. *See* 15 *Mcquillin Municipal Corporations* § 43.46 at 687 (rev. ed.1995); Robert Lamb and Stephen P. Rappaport, *Municipal Bonds* at 274 (1980); Thomas M. Cooley, *Constitutional Limitations,* at 470–79 (8th ed.1927); J.A. Burhans, *The Law of Municipal Bonds,* at 43–44, 50–51 (1889). And if litigation in the courts is required, building the intended facilities would, as a practical matter, be delayed at best, prevented at worse, and entail in all events unnecessary expense and hazard.

In particular reference to statutes like section 3.002(d), our supreme court has stated more succinctly as follows:

> The evident purpose [of such statutes] which impose the duty upon the attorney general to pass upon the validity of bonds proposed to be issued by any municipality or political subdivision of this State, is not only to protect the particular locality and its inhabitants against the imposition of unauthorized or illegal obligations, but also to give assurance to the ... intending purchasers of such bonds that if and when such bonds are so purchased, the purchaser will acquire an indefeasible title thereto. The duty thus imposed upon the Attorney General is important and is in no sense perfunctory.

*City of Galveston v. Mann,* 135 Tex. 319, 143 S.W.2d 1028, 1035 (1940); *see also Brazos River Auth. v. Carr,* 405 S.W.2d 689, 697 (Tex.1966).

In chapters 332 and 334, the legislature determined that the facilities contemplated therein were of legitimate state interest. If that be the case, the means set out in article 717k–8 for practically securing the funds necessary to erect such facilities share the same interest. We hold the preclusive effect of article 717k–8, section 3.002(d), is therefore not unreasonable or arbitrary when balanced against the statutory purposes.

 Throughout issues five through nine, Leonard complains that he did not receive a copy of an opponent's brief before the trial-court hearing on the Attorney General's motion to dismiss for want of jurisdiction. We find no reversible error in such complaint. If Leonard did not receive the copy, we have assumed the good faith of his first amended original petition and "[i]t is a fundamental rule that in determining the jurisdiction of the trial court, the allegations of the petition made in good faith are determinative of the cause of action." *Brannon v. Pacific Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466, 469 (1949). Leonard has taken advantage of his opportunity to brief in this Court the issue of whether subject-matter jurisdiction is shown or not shown on the face of his petition. We therefore cannot conclude that the error complained of, if such was error, probably caused the rendition of an improper judgment or prevented Leonard from properly presenting the case to this Court. *See* Tex.R.App. P. 44.1.

We affirm the trial-court judgment.